BOWLDS ET AL., APPELLANTS, *v.* SMITH, APPELLEE.

22

(No. 5435—Decided July 3, 1961.)

*Messrs. Bugbee, Johnston & Conkle* and *Mr. Warren D. Wolfe,* for appellants.

*Mr. Marvyn R. Lachin,* for appellee.

SMITH, P. J.  This is an appeal on questions of law from a judgment of the Court of Common Pleas rendered in favor of defendant, appellee herein, upon the motion of defendant for a summary judgment.

The petition was filed on June 7, 1960.  On October 27, 1960, a motion to make the petition definite and certain was overruled and defendant was granted leave to answer in two weeks.  No answer was filed to the petition, but, on December 19, 1960, defendant filed her motion for summary judgment. On a pretrial held on December 27, 1960, the court, noting that a motion for summary judgment had been filed, gave defendant leave to prepare and file by January 16, 1961, a brief, depositions and affidavit in support of the motion.  On January 5, 1961, an entry of January 4, 1961, wherein motion for summary judgment was overruled, was vacated and set aside.  On January 13, 1961, defendant filed an affidavit of one Harry Welch, and depositions as upon cross-examination of plaintiffs James E. Bowlds and Jo Ablena Bowlds.  The motion of defendant for summary judgment was granted on March 17, 1961, apparently without hearing, and an entry for hearing was granted for

March 20, 1961. Thereafter, on March 27th, a final order was made granting the motion for summary judgment.

Since this court has concluded that the trial court erred in granting the motion for summary judgment, it is unnecessary to determine whether such motion was prematurely filed before the filing of answer, the appellant not having raised the question. In passing, it may be noted that Section 2311.041, Revised Code, provides the time for filing such a motion, to wit, "at any time after the action is at issue." Thereafter, "summary judgment shall be rendered forthwith if the *pleadings*, depositions, answers to interrogatories, admissions of the genuineness of papers or documents, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis ours.) *Quaere*: For the purpose of a motion for summary judgment, is the action "at issue" upon the filing of a petition and before an answer is filed controverting the allegations of the petition?

The question was not in issue in the only reported cases in Ohio, namely *Priester* v. *State Foundry Co.*, 172 Ohio St., 28, and *Petroff* v. *Commercial Motor Freight, Inc.*, 82 Ohio Law Abs., 433, in which the motions were filed after answers to the petitions had been filed. In *Perkins* v. *Industrial Commission*, 106 Ohio St., 233, 238, it is said:

"The function of pleadings is to define issues by a statement in the petition, of facts making up the cause of action, and an admission or denial of those facts in the answer."

The allegations of the petition show a cause of action sounding in liability for fraudulent concealment of latent or hidden defects in certain real estate improved by an apartment house thereon sold to plaintiffs, the defendant having knowledge thereof at the time of the sale, coupled with a representation by the agent of the defendant-seller, that the premises had no defects not discoverable upon practicable examination. In the case of *Shinkle, Wilson & Kreis Co.* v. *Birney*, 68 Ohio St., 328, 334, 67 N. E., 715, a lessor-lessee case, it is said that "in the application of this rule, the terms, fraud, fraudulent concealment, constructive fraud and deceit are synonymous."

The operative facts alleged in the petition are that prior to October 23, 1959, defendant was the owner of described prem-

ises located on Erie Street in Toledo, Ohio; that prior to October 24, 1959, defendant entered into an agreement with Harry Welch Realty Company under which the company undertook to secure a purchaser for the premises for a specified fee; that, on October 24, 1959, pursuant to the terms of such agreement, the company, by Harry Welch, exhibited the real estate to plaintiffs and at such time represented to plaintiffs that there were no material hidden defects in the building on the premises; that, about November 20, 1959, a sale was consummated for $14,000, the defendant and her agent Harry Welch Realty Company being present; that in the early part of December 1959, plaintiff James E. Bowlds had occasion to go into the "crawl space" at the front of the house for the first time and discovered the floor joists and supports extensively weakened and eaten away by termites; that this was the first time plaintiffs knew of the condition and were without knowledge or the means of knowing the condition by ordinary examination prior to the purchase of the premises; that the defendant knew and concealed the fact as to such condition as a material hidden defect; that had plaintiffs known of said condition prior to making the contract of sale, they would not have entered into the contract; and that the cost of freeing the premises of termites is $652.50 and repairing the structural defects is $1,112.

In support of the motion for summary judgment, defendant-movant filed depositions, as upon cross-examination of the plaintiffs. The plaintiff Jo Ablena Bowlds testified that she observed the house when she would go by to and from work; that a "for sale" sign bore the name of Harry Welch, whom plaintiff called on the telephone for an appointment to see the house; that when plaintiffs looked at the house they discussed with Welch about work to be done on the house, such as painting; that plaintiffs, with Welch, went through the house, with the exception of one apartment where the tenant was not at home; that Welch walked with plaintiffs through the house and he showed them each apartment; that access to the attic was just a small hole in the ceiling; that the house had a furnace room and utility room; that there is no basement under the whole house, just a partial basement; that plaintiffs went into the basement, which has one small window and a dim light bulb, but Welch did not go down with them; that some time after plaintiffs purchased the house, they discovered a small door

from the basement leading into a "crawl space" under the other part of the house; that Welch "told us what the asking price was [$20,000] but he said that he was willing for us to make an offer. And he says 'Look around and see. What has to be done is right in front of you' ''; that the next day plaintiffs made an offer to Welch of $14,000 and made a deposit of $100, which he said he would take to the defendant-owner; that at the time of the offer it was discussed "what had to be done, that this had to be done and that had to be done. And he said, 'Well, what is to be done, well, you're looking at it right there, so you can see what it is to be done * * * Well, figure it up' '' and "it was an investment"; that the offer to purchase was for $14,000 payable $5,000 at closing and balance secured by mortgage; that Welch said, " 'it's a wise deal, that he thought we would be satisfied with the place and he was sure that we'd be satisfied and he thought we made a wise decision' ''; and that plaintiffs did not meet the defendant until the time of closing the transaction, at which time the conversation was concerning the legal details.

The testimony on deposition of the plaintiff James E. Bowlds is mainly a corroboration of the testimony of the plaintiff Jo Ablena Bowlds, his wife. He stated that he went with his wife and Welch by appointment to see the premises and looked at the outside of the house as to things that needed to be done and discussed them with Welch; that when he and his wife went down in the basement, Welch remained upstairs; and that the conversation with Mr. Welch before closing the sale was as follows:

"Q. On that particular day. And in that particular day nothing else took place or nothing else was said other than what Mrs. Bowlds has already certified to? A. He promised me everything that was wrong with this place we could see it before our eyes.

"* * *

"A. At that particular day [Mr. Welch said] we had made a wonderful investment."

He testified further that in December 1959, after the purchase of the premises, Bowlds went through a small door into the "crawl space" to repair a waterline and the joist fell apart when he attempted to nail on brackets; that this condition underneath was not apparent on the floor above; that he secured

a figure ($652.50) from an exterminator to rid the house of the termites; that the termite condition was worse than he had ever seen in his life; and that he also got a price for repair of the damage done by termites in the amount of $1,112 for labor and material.

Further, on the motion, defendant filed an affidavit of Harry Welch in which he stated that he does business as the Harry Welch Realty Company; that he entered into an agreement with Helen Smith, the defendant, to secure a purchaser for the premises; that, on October 24, 1959, he exhibited the real estate to the plaintiffs; that he did not represent to plaintiffs that there was no material hidden defects in the building on the premises; and that he made no representation whatsoever to plaintiffs with reference to hidden defects or the condition of the premises. The defendant herself did not file an affidavit pertaining to her part in the transaction.

The substance of the depositions and affidavit are outlined in considerable length to demonstrate that what was offered on the motion manifests a genuine issue of material facts defeating the motion. Section 2311.041, Revised Code, provides that summary judgment shall be rendered only if "no genuine issue as to any material fact" is shown. The statute provides further that "the party against whom the motion for summary judgment is made is entitled to have such depositions * * * and affidavits construed most strongly in his favor." The party against whom the motion is filed "may file opposing affidavits," and the absence of such affidavits in the case at bar does not affect our conclusion, since what has been submitted by defendant in support of the motion has not disclosed the nonexistence of a genuine issue of any material fact.

If the allegations of the petition show that a cause of action has not been stated, the proper procedure to bring this to the court's attention is by demurrer and not by a motion for summary judgment. *McLoughlin* v. *Malnar*, 237 Wis., 492, 297 N. W., 370. We noted above that the allegations of the petition show a cause of action. *Shinkle, Wilson & Kreis Co.* v. *Birney, supra*. See, also, *Hadley* v. *Clinton County Importing Co.*, 13 Ohio St., 502, 513; *Parmlee, Admr.*, v. *Adolph*, 28 Ohio St., 10; *Pumphrey* v. *Quillen*, 165 Ohio St., 343; and 24 Ohio Jurisprudence (2d), 676, 682, 685, 688 and 706, Sections 74, 81, 82, 85, 90 and 113.

The vendee is chargeable with knowledge of all things which a normal inspection under the circumstances would reveal, and as to defects either known or which should have been known by a proper inspection, such defects are waived. As to such defects, whether the vendee has knowledge thereof and whether the defects were patent or latent are questions on genuine issues of fact for the jury under proper instructions of the court. *Galvin v. Keen*, 100 Ohio App., 100, 135 N. E. (2d), 769. Whether the defendant has knowledge of a material fact which he failed to disclose to the plaintiff is a matter for the jury. *Smith v. Josselyn*, 40 Ohio St., 409. Questions of fact are usually presented by issues concerning whether the defendant had knowledge of the truth or falsity of his representations, or of the existence of facts which he concealed, whether he honestly believes the statements or representations to be true and whether he had adequate reason to believe they were true. The question as to whether an intent to defraud exists is one of fact for consideration of the jury. 25 Ohio Jurisprudence (2d), 76, Section 259. The affidavit of Welch, even if considered only as a denial of what appeared in the depositions of the plaintiffs, involved a conflict in the testimony and the credibility of the witnesses, which are again genuine issues of fact and a proper matter for consideration by a jury. As to representations by the agent, see *Kerr v. Parsons*, 83 Ohio App., 204, 82 N. E. (2d), 303.

From the foregoing it is apparent that defendant can not rely on the rule of *caveat emptor* as pronounced under the facts found by a jury in the case of *Traverse v. Long*, 165 Ohio St., 249, 135 N. E. (2d), 256.

Since Section 2311.041, Revised Code, is a recent statutory enactment in Ohio, effective November 9, 1959, we are constrained to briefly discuss its origin and application in other jurisdictions. To date, there appear to be only two reported decisions in the courts of Ohio. The decision in the Supreme Court in *Priester v. State Foundry Co., supra*, turned upon a judgment which was not upon the whole case and lends meager assistance as to its general application. However, the court recognizes that the statute derives from Rule 56 of the Federal Rules of Civil Procedure, and its conclusions are based on federal cases. About twenty-six sister states had enacted some

summary judgment procedure at the time of the enactment of Section 2311.041.

We have the benefit of the initial decision of Judge Sater on the statute in *Petroff* v. *Commercial Motor Freight, Inc.,* *supra.* The headnotes of that case reveal the holding that the purpose of the statute is to terminate useless and expensive litigation when there is no genuine issue as to any material fact. It is to be used when issues are feigned and when there is really nothing to try. Furthermore, on a motion for summary judgment, it is not the function or the duty of the court to reconcile ambiguities or conflicts in a witness's testimony. It is a procedural remedy that is to be used with caution. All doubts must be resolved against the movant; where there is the slightest doubt as to the facts the motion will not lie; and where the pleadings, affidavits and depositions indicate beyond doubt that a jury case is presented, the motion for summary judgment will be overruled. It is apparent that the opinion was the result of extensive research, and properly relies on adjudications in federal and state courts dealing with motions for summary judgment.

A construction of Section 2311.041, Revised Code, entails a penetration of the incrustations of federal and state court interpretations and applications, under a cardinal rule of statutory construction to be observed when a statute is patently derived from those jurisdictions. This statute comes to Ohio not too well recommended; the judges in other jurisdictions by their opinions are not addicted to extravagant praise for its operation, which tends to encroach upon heretofore settled and mature procedure.

Thus, the many warnings directed to its legitimate use seem to outnumber its acceptance in a limited way. It comes heralded not as wise and judicially sound *ad hoc*, but, put to the test, has become suspect. Among the warnings is that it is a drastic innovation and should be used with caution and confined to the strict limitation of the language of the statute and without impingement on the constitutional right of due process and trial by jury. It should not be construed as giving discretion in the court to implement a substitute for traditional and existing methods for the determination of the facts.

Moreover, the statutory procedure for summary judg-

ment on motion was not intended as a test of the sufficiency of pleadings or to supplant a demurrer or motion to make pleadings more definite and certain. The power given to grant summary judgments must be exercised with care and not be extended beyond its just limits, and before a party is entitled to the benefit of such a statutory remedy he should bring himself squarely within the spirit and letter of the statute. 49 Corpus Juris Secundum, 386, 387, Section 219.

We deduce that the statute is a creature of Pygmalion, picked up by the Federal Rules of Civil Procedure and state legislation and handed over to the tender mercies of the courts which ever since have been striving to mold her into a fair lady acceptable in proper judicial circles. Certainly the statute was not intended to be the omnibus for ingenious reasoning and divination by theory whereby its salutary purpose would be diluted by an osmosis of litigation to circumvent, substitute, supplant or even sabotage the time-tested tenets of jurisprudence including constitutional guarantees. The special beneficial usufructs of the statute should remain undefiled.

In *Hogue-Sprague Corp.* v. *Bird & Son, Inc.* (1950, D. C. Mass.), 91 F. Supp., 159, appears the following succinct statement:

"Summary judgment should not be allowed if there is a genuine issue of material fact proper for trial. *Peckham* v. *Ronrico Corp.*, 1 Cir., 171 F. (2d), 653. The duty of the court is to determine, not what the facts are, but whether such an issue of fact exists, *United States* v. *Curtiss Aeroplane Co.*, 2 Cir., 147 F. (2d), 639; *American Optical Co.* v. *New Jersey Optical Co.*, D. C. Mass., 58 F. Supp., 601, and all doubts as to the existence of such an issue must be resolved against the party moving for a summary judgment. *Toebelman* v. *Missouri-Kansas Pipe Line Co.*, 3 Cir., 130 F. (2d), 1016, 1018."

The judgment of the Common Pleas Court granting the motion of defendant for summary judgment should, therefore, be reversed and the cause remanded to that court for further proceedings according to law.

*Judgment reversed.*

DEEDS and FESS, JJ., concur.