BOARD OF TOWNSHIP TRUSTEES OF MONTVILLE TOWNSHIP, APPELLANT, *v.* WDBN, INC., APPELLEE.

(No. 1226—Decided September 1, 1983.)

*Mr. Gregory W. Happ,* prosecuting attorney, for appellant.

*Mr. John C. Oberholtzer,* for appellee.

QUILLIN, P.J. R.C. 519.21 exempts public utilities from all township zoning regulations. We are called upon in this case to review the propriety of the trial court's ruling that WDBN, Inc., a radio broadcasting company, is a public utility so as to come within this exemption. For the reasons stated herein we conclude that that determination is a mixed question of law and fact; the record contains insufficient facts upon which to base a conclusion; and, therefore, summary judgment is inappropriate.

The Board of Township Trustees of Montville Township, appellant herein, filed a complaint in the court of common pleas alleging that defendant-appellee, an Ohio corporation organized for the purpose of broadcasting, was about to construct a transmission tower in a non-permitted zone claiming it was exempt from township zoning because it was a public utility. The township requested an injunction and a declaration that the radio station was subject to township zoning regulations.

The radio station admitted the allegations of the complaint and then filed a motion for summary judgment. Based on the pleadings only, the trial court granted a summary judgment declaring that the radio station was a public utility and therefore exempt from township zoning. The township appeals.

The pertinent statutes do not define what is meant by a "public utility." Most authorities when attempting a definition first acknowledge that there is no definition which fits all cases; list characteristics of a public utility; caution that the presence or absence of any particular characteristic is not controlling; and conclude it is a mixed question of law and fact. 64 American Jurisprudence 2d (1972) 549, Public Utilities, Section 1; 73B Corpus Juris Secundum (1983) 127, Public Utilities, Section 2; 45 Ohio Jurisprudence 2d (1960) 164, Public Utilities, Section 2; *Freight, Inc.* v. *Bd. of Twp. Trustees* (1958), 107 Ohio App. 288 [8 O.O.2d 212]; and *Motor Cargo, Inc.* v. *Bd. of Twp. Trustees* (C.P. 1953), 67 Ohio Law Abs. 315 [52 O.O. 257].

The most recent occasion for the Ohio Supreme Court to consider what is a public utility is found in *Ohio Power Co.* v. *Attica* (1970), 23 Ohio St. 2d 37 [52 O.O.2d 90]. In *Attica,* the question was whether a non-profit corporation organized for the purpose of supplying electricity to its members is a public utility to which a municipal corporation may grant a franchise under Section 4, Article XVIII of the Ohio Constitution.

The court, at page 41, stated:

"The attributes of a public utility were discussed in *Industrial Gas Co.* v. *Pub. Util. Comm.* [1939], 135 Ohio St. 408, wherein paragraph one of the syllabus reads:

" 'Whether a corporation is operating as a public utility is determined by the character of the business in which it is engaged.'

"In the course of the opinion, it was said, at page 413:

" 'A public utility to the extent of its capacity is bound to serve those of the public who need the service and are within the field of its operations, at reasonable rates and without discrimination. * * * Yet it is not a controlling factor that the corporation supplying service does not hold itself out to serve the public generally. It has been held that a business may be so far affected with a public interest that it is subject to regulation as to rates and charges even though the public does not have the right to demand and receive service. *German Alliance Ins. Co.* v. *Lewis* [1914], 233 U.S., 389, 58 L. Ed., 1011, 34 S. Ct., 612, L. R. A. 1915C, 1189.

" 'Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is determined by the nature of its operations. Each case must stand upon the facts peculiar to it. A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by the duly constituted governmental authority. * * *'

"In the *Industrial Gas Co.* case, the court applied the above enumerated criteria in determining whether the company in question was a public utility and subject to regulation by the commission. Here, although the corporation in question is specifically excepted by statute from regulation by the commission, the factors to be considered in determining whether it is a public utility are the same.

"We must, therefore, consider the nature of North Central's operation. * * *."

Coming to the specific question as to whether a radio station is a public utility, we find cases going both ways. *Mammina* v. *Zoning Bd. of Appeals* (1981), 110 Misc. 2d 534, 442 N.Y.Supp. 2d 689; *Commonwealth* v. *WVCH Communications, Inc.* (1976), 23 Pa. Commw. 292, 351 A. 2d 328; *WANV, Inc.* v. *Houff* (1978), 219 Va. 57, 244 S.E. 2d 760; and *State* v. *Redman* (1962), 60 Wash. 2d 521, 374 P. 2d 1002.

The United States Supreme Court discussed the nature of the radio and television businesses as it relates to government control and the right of public access in *Columbia Broadcasting System, Inc.* v. *Democratic National Committee* (1973), 412 U.S. 94. The court, while recognizing that broadcast frequencies are a scarce resource and a licensee is a "public trustee," noted that Congress rejected the proposal to treat broadcasters as public utilities and specifically provided that they should not be deemed to be common carriers. The right of access of a candidate for federal office was further discussed in *CBS, Inc.* v. *Federal Communications Comm.* (1981), 453 U.S. 367.

In both the above-cited cases the Supreme Court was concerned, as we are, with the First Amendment ramifications implicit in according the radio and television businesses the status of public utilities or common carriers. Public utility status is not an unmixed blessing. It invites government regulation and control. If an entity seeks to enjoy the benefits of being a public utility, it must be prepared to accept the burdens and restrictions that flow therefrom.

We conclude that whether a radio broadcasting station is a public utility so as to be exempt from township zoning is a mixed question of law and fact. Therefore, the trial court erred in holding, without evidence, that a radio station is necessarily exempt from township zoning.

286

The judgment is reversed and the case is remanded for further proceedings according to law.

*Judgment reversed and case remanded.*

MAHONEY and BAIRD, JJ., concur.