SWANTON TOWNSHIP BOARD OF TRUSTEES,
Appellant and Cross–Appellee, et al.

v.

TOLEDO–LUCAS COUNTY PORT AUTHORITY
et al., Appellees and Cross–Appellants.

[Cite as *Swanton Twp. Bd. of Trustees v. Toledo–Lucas Cty. Port Authority* (1990), 66 Ohio App.3d 555.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–258.

Decided June 1, 1990.

*Jim Miller,* for appellant and cross-appellee.

*Teresa Grigsby,* for appellees and cross-appellants.

---

*Per Curiam.*

This case is an appeal and cross-appeal from a judgment of the Lucas County Court of Common Pleas.

The undisputed facts of the case are as follows. Toledo Express Airport is partially located in Swanton Township. Appellee and cross-appellant, city of Toledo, is the owner of the land where the airport is located. Appellee and cross-appellant, Toledo–Lucas County Port Authority ("Port Authority"), leases the land and operates Toledo Express Airport.

Toledo Express Airport presently includes two runways, a terminal, cargo buildings, airplane hangars and maintenance buildings. The Port Authority does not directly provide the services available at the airport. Instead, the Port Authority, through subleasing agreements with individual airlines, provides passenger and cargo air transport. The same is true of other services, which are inherent in the operation of any public, metropolitan airport, such as

automobile parking and rental, motel and restaurant facilities and airplane hangar rental to various companies and other organizations. However, all transportation and other ancillary services are centralized, organized and managed through the Port Authority.

In 1989, the Port Authority began construction of a new hub facility and related improvements to be leased to Burlington Air Express USA, Inc., an air cargo transport company. Neither the city of Toledo nor the Port Authority applied for a zoning permit in regard to this project.

Appellant and cross-appellee, Swanton Township Board of Trustees ("Trustees"), brought the present action for declaratory judgment alleging that Toledo Express Airport is subject to Swanton Township zoning regulation and, therefore, zoning certificates must be obtained for the new construction at the airport. In contrast, appellees argue that the airport is exempt from township zoning regulations because it is a public utility exempt from such regulation under R.C. 519.211.

On June 5, 1989, appellees filed a motion for summary judgment. On August 3, 1989, the trial court entered judgment in favor of appellees on the ground that as a public utility Toledo Express Airport is exempt from township zoning regulation. The trial court declined to address the further issue regarding the validity of the Swanton Township Zoning Resolution.

It is from that judgment that the Trustees raise the following three assignments of error:

"1. The language of R.C. § 519.211, when construed 'in pari materia' with other sections of the Ohio Revised Code relating to the same subject (airports) will not permit a judicial determination that an airport is a public utility for purposes of § 519.211.

"2. Even if the language of R.C. § 519 [sic] would permit an interpretation that an airport is a public utility, it was error for the trial court to conclude as a matter of law that the Toledo Express Airport is a public utility exempt from regulation pursuant to R.C. Chapter 519 without first conducting an examination of the facts peculiar to the specific business of Toledo Express Airport and basing its decision upon that examination.

"3. Even if the language of R.C. § 519.211 would permit an interpretation that an airport is a public utility, plaintiff/appellant believes that when construing the facts most strongly in favor of plaintiff/appellant (as required by Ohio Rule of Civil Procedure 56[C]) reasonable minds could conclude that the Toledo Express Airport does not qualify as a public utility and it was error for the trial court to grant defendant[s]/appellees' motion for summary judgment."

It is also from that judgment that appellees raise the following sole cross-assignment of error:

"If this court should conclude that Toledo Express Airport is not a public utility and thus is subject to the zoning authority of Swanton Township, this court must still affirm the decision of the trial court dismissing the action against the Toledo–Lucas County Port Authority on the ground that the Swanton Township zoning resolution is invalid. The trial court should have found the resolution invalid."

As their first assignment of error, the Trustees argue that an airport may never be considered a public utility under R.C. 519.211. Essentially, the Trustees argue if an airport may be considered a public utility under R.C. 519.211, R.C. Chapter 4563 (governing airport hazard areas) and R.C. 308.-06(Q) (governing airport authorities) will be nullified.

We find that Sections II through IIIB of the well-reasoned opinion of the Honorable Frederick H. McDonald, rejecting the argument that R.C. Chapter 4563 requires a finding that airports may not be considered public utilities, are dispositive of this issue as raised in the first assignment of error. For that reason, such opinion is hereby adopted as our own. See Appendix.

We further find the Trustees' remaining argument, that R.C. 308.06(Q) requires a finding that airports may not be considered public utilities, also without merit. R.C. 308.06(Q) authorizes regional airport authorities to request the appropriate zoning board "to establish and enforce zoning regulations pertaining to any airport * * * in the manner prescribed by *sections 4563.01 to 4563.21 of the Revised Code.*" (Emphasis added.) Inasmuch as we have determined that R.C. Chapter 4563 does not preclude airports from being considered public utilities, it cannot be argued that R.C. 308.06(Q), which provides for the enforcement of R.C. Chapter 4563, precludes airports from being considered as such. Accordingly, the Trustees' first assignment of error is found not well taken.

The Trustees' second and third assignments of error will be considered together. Essentially, the Trustees argue that even if an airport may be considered a public utility, the determination that a particular airport, *i.e.,* Toledo Express Airport, is a public utility must be made on a case-by-case basis. The Trustees further argue that the facts of the present case do not support the trial court's determination that Toledo Express Airport is a public utility.

R.C. 519.211 specifically exempts public utilities from township zoning regulation, although there is no definition of a "public utility" to be found in R.C. Chapter 519. The Supreme Court of Ohio in *Marano v. Gibbs* (1989), 45

Ohio St.3d 310, 311, 544 N.E.2d 635, 636, held that "the determination of entities as public utilities is a mixed question of law and fact." The *Marano* court further stated that "an entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public." *Id.* The *Marano* court also held that "while it is important that an entity be subject to regulatory control, such regulation is not necessarily required for an entity to be considered a public utility." *Id.* At least one court of appeals has held that a commercial airport is a public entity and therefore exempt from township zoning regulation. *Yunker v. Saddler* (July 1, 1966), Lorain App. No. 1712, unreported.

In the present case, we find reasonable minds could only conclude that Toledo Express Airport is operated as a matter of public concern and that membership is indiscriminately and reasonably made available to the general public. It is undisputed that the airport's freight and passenger services are open to the public. Further, necessary and ancillary services such as parking facilities, restaurants and car rental agencies are also open to the public. It is the Port Authority's responsibility to negotiate and execute all leases and operating agreements, manage the Toledo Express Airport police, fire and rescue operations and supervise all aviation and other ancillary facilities.

Although the Port Authority operates the services of the Toledo Express Airport through subleasing agreements, agreements that are arguably not available to the general public, such agreements do not destroy the public nature of the services offered to the public by the airport. The service of passenger and cargo air transport, along with necessary and ancillary services, remains reasonably available to the general public. Accordingly, the Trustees' second and third assignments of error are found not well taken.

In light of our disposition of the Trustees' assignments of error, this court does not find it necessary to address appellees' cross-assignment of error. Accordingly, appellees' cross-assignment of error is found not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, MELVIN L. RESNICK and FRANKLIN, JJ., concur.

ROBERT V. FRANKLIN, JR., J., retired, of the Lucas County Common Pleas Court, sitting by assignment.

APPENDIX

Aug. 3, 1989

FREDERICK H. McDONALD, Judge.

This case is before the court on the joint motion for summary judgment filed on behalf of defendants, Toledo–Lucas County Port Authority and the city of Toledo, and the opposition thereto filed on behalf of plaintiff Swanton Township Board of Trustees and intervening plaintiffs Citizens Against Burlington, Inc., Floyd Elton, Jr., and Frances E. Garmenn. For the reasons that follow, I find that the defendants' motion for summary judgment is well taken.

I

The undisputed facts of this case are as follows. The plaintiff Swanton Township Board of Trustees is empowered to enforce its zoning regulations in Swanton Township, Ohio. The defendant city of Toledo owns land in Swanton Township and Monclova Township which constitutes the Toledo Express Airport. The defendant Toledo–Lucas County Port Authority leases that property and operates the airport. The Port Authority has undertaken the construction of a hub facility and related improvements which will be leased to and operated by Burlington Air Express USA, Inc., for use in Burlington's air cargo and freight delivery business. Intervening plaintiff Citizens Against Burlington, Inc. is a not-for-profit Ohio corporation. Intervening plaintiffs Floyd Elton, Jr. and Frances E. Garmenn are residents of Swanton Township, Ohio.

Burlington is engaged in the transportation of domestic and international air freight. It presently operates a fleet of cargo aircraft from its present hub facility in Fort Wayne, Indiana. Its lease for the Fort Wayne facility expires in October 1990. In order to induce Burlington to transfer its operations to the Toledo Express Airport, the Port Authority has undertaken construction of a new hub facility and related improvements at the Toledo Express Airport. In April 1989, the Port Authority received from the Lucas County Building Regulations Department a number of building permits for the construction of the hub facility and related improvements. Over $30 million worth of airport improvement revenue bonds have been issued by the Port Authority to finance the construction of the hub facility.

The plaintiff Trustees have filed a complaint for a declaratory judgment. In their complaint, the trustees allege that pursuant to R.C. Chapter 519 and pursuant to the Swanton Township zoning resolution, the Trustees are empowered to regulate the planned construction at the airport, and that the

defendants are therefore required to obtain from the Trustees a zoning certificate before any construction at the airport.

The intervening plaintiffs also seek a declaratory judgment that the defendants are subject to the Swanton Township zoning resolution. In addition, the intervening plaintiffs seek a declaratory judgment that the requirements of R.C. Chapter 4563 governing airport zoning incorporates the township zoning resolution and requires the defendants to obtain a zoning certificate from the Trustees. The intervening plaintiffs also seek a declaratory judgment that the defendants are subject to the provisions of R.C. Chapters 3781 and 3791 dealing with building standards, and that they are required to comply with those provisions before starting any of the planned construction at the airport. Finally, the intervening plaintiffs seek an injunction enjoining the defendants from any construction at the airport until such time as they have complied with the foregoing zoning and building statutes.

The defendants have filed a joint motion for summary judgment against all plaintiffs. With regard to the claim of all plaintiffs that the Swanton Township zoning resolution requires the Port Authority to obtain a zoning certificate from the Swanton Township Board of Trustees before any construction begins, the defendants advance three arguments: (1) that the Swanton Township zoning resolution is invalid; (2) that the airport is exempt from township zoning because it is a public utility; and (3) that the airport is immune from the operation of the township zoning resolution.

At a pretrial conference in this case, the parties stipulated that only the first two of the defendants' arguments with regard to the applicability of the zoning resolution would be dealt with in these summary judgment proceedings. With regard to the remaining claims of the intervening plaintiffs, the defendants argue that the provisions of R.C. Chapters 4563, 3781 and 3791 do not apply to the proposed construction at the airport.

## II

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is

made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794–795.

The Sixth District Court of Appeals has consistently held that motions for summary judgment should be granted with caution in order to protect the non-moving party's right to trial. As stated by the court in *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 16, 467 N.E.2d 1378, 1386:

"We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and inferences. It is settled law that '[t]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, * * * ' which party in the instant case is appellant. It is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." (Citations omitted.) See, also, *Bowlds v. Smith* (1961), 114 Ohio App. 21, 29, 18 O.O.2d 305, 309, 180 N.E.2d 184, 189.

## III

A. Applicability of R.C. Chapter 519 and the Swanton Township zoning resolution to the planned construction at the airport.

 A review of the authorities compels the conclusion that the airport is exempt from township zoning under R.C. Chapter 519 and the Swanton Township zoning resolution because it is a public utility. For that reason it is unnecessary to consider the defendants' argument that the Swanton Township zoning resolution is invalid or unconstitutional.

The defendants concede that Swanton Township has the power to regulate by resolution certain activities pursuant to R.C. Chapter 519. The defendants, however, maintain that R.C. 519.211 expressly excludes a township's authority to regulate any public utility. The defendants contend that the Toledo Express Airport is a public utility and is, therefore, not subject to the Swanton Township zoning resolution.

R.C. 519.211 expressly limits a township's zoning power over public utilities. It states in part:

"Section 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business."

Courts in Ohio have consistently enforced the public utility exemption of R.C. 519.211. See, generally, *State, ex rel. Taylor, v. Whitehead* (1982), 70 Ohio St.2d 37, 40, 24 O.O.3d 88, 89, 434 N.E.2d 732, 734. Recently, the Third Appellate District in *Wood's Carriers v. Pleasant Twp. Bd. of Trustees* (Dec. 11, 1987), Marion App. No. 9–86–32, unreported, 1987 WL 28968, held:

" * * * Under R.C. 519.21 [now 519.211], the township had no power to regulate the buildings or structures of the public utility and further had no power to regulate the public utility's use of the land. Although the Board included the land in an agricultural zone, it could not regulate the public utility's use of the land so long as a public utility continued to operate on the land."

R.C. Chapter 519 does not define "public utility" for purposes of the limitations of power set forth in R.C. 519.211. In *Montville Twp. Bd. of Twp. Trustees v. WDBN* (1983), 10 Ohio App.3d 284, 285, 10 OBR 400, 401, 461 N.E.2d 1345, 1347, the court, citing *Ohio Power Co. v. Attica* (1970), 23 Ohio St.2d 37, 41, 52 O.O.2d 90, 92, 261 N.E.2d 123, 126, was presented with the question of what constitutes a public utility:

"Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is determined by the nature of the operations. Each case must stand upon the facts peculiar to it. A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by duly constituted governmental authority. * * * "

Further, the Ohio Supreme Court in *Southern Power Co. v. Pub. Util. Comm.* (1924), 110 Ohio St. 246, 143 N.E. 700, paragraph two of the syllabus, defined a public utility in the following manner:

"To constitute a 'public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state."

Addressing the specific question as to whether an airport is a public utility, many courts in Ohio have held an airport to be a public utility. *Toledo v. Jenkins* (1944), 143 Ohio St. 141, 28 O.O. 72, 54 N.E.2d 656; *Blue Ash v. Cincinnati* (1962), 173 Ohio St. 345, 19 O.O.2d 274, 182 N.E.2d 557; *Cleveland v. Perk* (1972), 29 Ohio St.2d 161, 163, 58 O.O.2d 354, 355, 280 N.E.2d 653, 654–55; *Yunker v. Saddler* (July 1, 1966), Lorain App. No. 1712, unreported.

In *Toledo v. Jenkins, supra,* at 150, 28 O.O. at 76, 54 N.E.2d at 663, the Ohio Supreme Court found the Toledo Municipal Airport to be a public utility:

"The statutory provisions confer upon the municipal corporation power to own or lease and operate landing fields and improve them with runways, buildings or other structures, so as to make them fully equipped aircraft and transportation terminals. As an airport of that character is a public utility (*State, ex rel. Chandler, v. Jackson*, 121 Ohio St., 186, 167 N.E., 396), the Toledo Municipal Airport was and is a complete public utility unit."

Relying on *Toledo v. Jenkins*, the Ohio Supreme Court again addressed the issue of whether an airport is a public utility in *Blue Ash v. Cincinnati, supra.* The court held in *Blue Ash* that the proposed airport " * * * must be classified as a public utility which may be operated by the city in its proprietary capacity." *Id.* at 348, 19 O.O.2d at 276, 182 N.E.2d at 560.

The foregoing authorities clearly establish that if an airport is a public utility, it is exempt from township zoning regulations. Based upon the record in this case, I find that there are no genuine issues of material fact concerning the status of the Toledo Express Airport and that the airport is, as a matter of law, a public utility. It follows that the defendants are entitled to summary judgment against plaintiff on their claims based upon R.C. Chapter 519, and the Swanton Township zoning resolution.

B. Applicability of R.C. Chapter 4563 to the planned construction at the airport

■ The plaintiffs also rely upon certain provisions in R.C. Chapter 4563 in support of their contention that the Trustees have authority to assert zoning authority over the planned construction at the airport. They argue that the provisions in R.C. Chapter 4563 express a legislative intent not to exempt airports from local zoning control. A review of the provisions of R.C. Chapter 4563 leads to the conclusion that it does not support the arguments advanced by the plaintiffs.

R.C. 4563.03 provides that when airport hazard areas appertaining to an airport are located within the territorial limits of one political subdivision, then the legislative authority of that political subdivision shall constitute an airport

zoning board. R.C. 4563.03 provides that the airport zoning board may adopt airport zoning regulations for the airport hazard areas. R.C. 4563.01(B) defines the term "airport hazard" as any structure or land use within an airport hazard area which obstructs the air space required for the flight of aircraft to and from the airport. R.C. 4563.01(C) defines "airport hazard area" as " * * * any area of land adjacent to an airport which has been declared to be an 'airport hazard area' by the division of aviation in connection with any airport approach plan recommended by such division."

R.C. 4563.05 states that prior to initial zoning of any airport hazard area, the airport zoning board shall appoint a commission, known as the airport zoning commission, to make recommendations as to the zoning regulations to be adopted. R.C. 4563.08 provides that upon request of an airport zoning commission, the Division of Aviation shall formulate an airport approach plan in order to define and determine the hazard area in which the airport zoning shall be applicable. Such a plan shall indicate the airport hazard area and the restrictions that should be contained in the airport zoning regulations. R.C. 4563.06 provides for the adoption by the airport zoning board of the airport zoning regulations following a public hearing. R.C. 4563.13 provides that the airport zoning regulations shall provide for an airport zoning board of appeals. R.C. 4563.19 provides that any person may appeal an action of the airport zoning board of appeals to the common pleas court.

R.C. 4563.04 deals with possible conflicts of zoning regulations. The plaintiffs rely heavily on the language of this section:

"In the event of conflict between any airport zoning regulations adopted under sections 4563.01 to 4563.21, inclusive, of the Revised Code, and any other zoning regulations applicable to the same area, whether the conflict would be with respect to the height of structures or objects of natural growth, the use of land, or any other matter, and whether such other regulations were adopted by the political subdivision which adopted the airport zoning regulations or by some other political subdivision, the limitation or requirement best calculated to insure safety shall govern."

R.C. 4563.10 provides that public utilities are exempt from airport zoning regulations.

The plain words of the statute do not confer zoning authority on the Swanton Township Board of Trustees. There is no evidence in this case that the Trustees or any other appropriate legislative authority have ever formed an airport zoning board within the meaning of R.C. 4563.03. There is no evidence that any airport zoning commission was ever formed pursuant to R.C. 4563.05. There is no evidence that the Division of Aviation ever defined or determined any airport hazard area in which airport zoning could be applied

as required by R.C. 4563.08. There is no evidence that any airport zoning regulations were ever adopted pursuant to R.C. 4563.06. Defendants simply cannot be held to be bound by airport zoning regulations which do not exist and which govern airport hazard areas which have never been defined.

The plaintiff Trustees rely upon certain language in R.C. 4563.04 in support of their position that an airport is not a public utility, and therefore is not entitled to be exempt from the Swanton Township zoning resolution. That section recognizes that there may be a conflict between zoning regulations adopted by the airport zoning board and regulations adopted by another political subdivision. The Trustees contend that by recognizing that local zoning authorities have the power to zone airport hazard areas, the legislature intended that local zoning authorities could exercise their zoning authority in a public or private airport within the township even if there is an airport zoning board under R.C. 4563.03. This contention is incorrect.

Airport zoning boards have the power to develop zoning regulations for airport hazard areas. An airport hazard area is by definition located on "land adjacent to an airport." Thus, R.C. 4563.03 does not permit an airport zoning board to establish zoning regulations on airport land. In addition, airport zoning regulations may by definition only regulate "airport hazards," which are structures or objects or land uses within an airport hazard area that obstruct the landing or taking off of aircraft. Thus, the zoning power of airport zoning boards is limited to a narrowly defined class of uses, which occur in geographical areas adjacent to airports. This construction of the provisions of R.C. Chapter 4563 is entirely consistent with a construction of R.C. 519.211, which exempts an airport from complying with township zoning regulations. Neither the Swanton Township Board of Trustees nor an airport zoning board, if it existed, has the statutory authority to regulate land use through zoning at the Toledo Express Airport. Swanton Township does have zoning authority in any airport hazard areas adjacent to the Toledo Express Airport. In the event of a conflict between zoning regulations in an airport hazard area, R.C. 4563.04 requires that that regulation which is best calculated to insure safety shall govern. Thus, if a developer wished to build a building in an airport hazard area adjacent to the Toledo Express Airport, he would have to obtain approval from both the Swanton Township Trustees and an airport zoning board. If the Trustees granted approval and the airport zoning board did not, then the conflict would be resolved by the safety test in R.C. 4563.04.

The fact that R.C. 4563.10 exempts public utilities from regulation by airport zoning boards is not evidence of a legislative intent that an airport is not to be treated as a public utility as argued by plaintiffs. Rather, it is a

legislative recognition of the accepted principle that public utilities should be exempt from local zoning. It follows that under R.C. Chapter 4563, public utilities, including airports, are exempt from airport zoning regulations that are applicable to certain areas adjacent to an airport.

The plaintiffs' contention that R.C. Chapter 4563 subjects the planned airport expansion to the zoning controls of Swanton Township must be rejected. The plaintiff Trustees do not have statutory authority pursuant to R.C. Chapter 4563 to exert zoning controls over the planned construction at the airport.

C. Applicability of R.C. Chapters 3781 and 3791 to the planned construction at the airport

The intervening plaintiffs' complaint alleges that defendants have not complied with the provisions in R.C. Chapters 3781 and 3791. These chapters deal with building codes and their enforcement through building certificates and building inspections.

The intervening plaintiffs contend that defendants were required to submit plans in compliance with R.C. Chapters 3781 and 3791 before entering into a contract for construction. They rely on R.C. 3791.04. It is undisputed that the defendant Port Authority has entered into a construction contract.

The intervening plaintiffs' reliance on R.C. 3791.04 is misplaced, because that section requires that the plans be submitted " * * * to the * * * township, or county building department having jurisdiction if such department has been certified as provided in division (E) of Section 3781.10 of the Revised Code * * *."

It is undisputed that Spencer Township does not have a building inspection office and that no township official is certified as a building inspector. Furthermore, the intervening plaintiffs alleged in their complaint that the Lucas County Building Regulation Department issued building permits to the Port Authority for the planned construction at the airport.

The only evidence in the record is that the Port Authority has complied with R.C. Chapters 3781 and 3791 by obtaining the required permits. That evidence requires a finding in favor of defendants. In addition, the intervening plaintiffs have cited no provisions of law which give them standing to obtain relief under R.C. Chapters 3781 and 3791.

The court finds, pursuant to Civ.R. 56, that there are no genuine issues of material fact as to the complaint of plaintiff Swanton Township Board of Trustees or as to the complaint of the intervening plaintiffs, and that defendants are, therefore, entitled to summary judgment as a matter of law.

568

It is therefore ordered that defendants Toledo–Lucas County Port Authority and the city of Toledo have summary judgment against the plaintiff Swanton Township Board of Trustees and that the plaintiff Trustees' complaint be dismissed with prejudice at plaintiff Trustees' costs.

It is further ordered that defendants have summary judgment against intervening plaintiffs Citizens Against Burlington, Inc., Floyd Elton, Jr., and Frances E. Garmenn, and that the intervening plaintiffs' complaint be dismissed with prejudice at the intervening plaintiffs' costs.

*Judgment accordingly.*