**WISEMAN et al.**

**v.**

**GENERAL MOTORS CORPORATION et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. 93–3376.

Decided March 16, 1995.

*Gary & Albrechta* and *Joseph F. Albrechta*, for Timothy Wiseman and Glenda Wiseman.

*Roetzel & Andress* and *Richard R. Strong*, for General Motors Corporation.

*Barkan & Robon*, *Russell R. Miller* and *Marshall W. Guerin*, for Cousins Waste Control Corporation.

---

FREDERICK H. McDONALD, Judge.

This cause is before the court upon summary judgment motions filed by defendant General Motors Corporation ("GM") and by defendant Cousins Waste Control Corporation ("Cousins"). Upon consideration of the pleadings, the competent summary judgment evidence, the written arguments of counsel, and the applicable law, I find that GM's motion should be denied in part and granted in part, and that Cousins' motion should be denied.

I

The facts relevant to these motions are as follows. At all relevant times plaintiff Timothy Wiseman was employed as a laborer for Cousins. In this

capacity, Wiseman was at GM's Lordstown, Ohio facility on January 4, 1990 "desludging" a GM paint booth. As a part of the assembly process, cars are positioned on grates over a pit, where they are painted, the excess paint dripping into the pit. Eventually, the paint sludge is removed by a large hose, vacuumed into a truck, and hauled away. To facilitate this process, Cousins was hired to assist in the desludging on this particular date.

During the desludging process, Cousins was responsible for bringing the hose into the facility, feeding it into the pit, and then hauling the hose and all of the waste material away. GM employees worked in the pit, pushing all of the sludge to one side toward the hose. When necessary, Cousins employees shortened the hose and then replaced it in another part of the pit to continue vacuuming the sludge. On January 4, 1990, Wiseman was helping to move the hose out of the pit at the end of the job. The hose, which was clogged, was heavy and rigid. According to Wiseman, the hose jerked, causing him to lose his balance and fall backwards into the pit, landing on an I-beam at the bottom of the pit.[1]

Wiseman testified in his deposition that the hazards in his work at the Lordstown site on this particular occasion were different from those on other occasions because of ongoing construction on the paint booths. (William Rupnick, a GM supervisor at the time of the accident, testified that the desludging was done as a prerequisite to the construction.) The parties appear to agree that, during the course of this same job, another employee fell and twisted his ankle. Because of this injury and the alleged hazards associated with the construction, Wiseman testified that he said to his supervisor, Martin Stevens, "What's going on? We shouldn't even be up here. With all this construction going on we should not be up here." According to Wiseman, Stevens replied, "There's nothing we can do about it, we got to finish up the job." Wiseman also testified that on the two or so other occasions that he had worked at the Lordstown plant, he was "almost positive" that he complained to his supervisors about dangerous working conditions. A couple of other employees complained as well, according to Wiseman. Douglas Winters and Martin Stevens, both Cousins employees, testified that the Lordstown site was not dangerous.

Wiseman filed the instant complaint against both GM and Cousins. Wiseman's claims against GM are as follows: Count I—negligence; Count II—negligent control of premises; Count III—failure to take necessary precautions; Count IV—breach of statutory and regulatory duty to provide safeguards; Count V—products liability (statutory); Count VI—products liability (common law). The

---

1. Martin Stevens, one of the other Cousins employees working with Wiseman on the date in question, testified that Wiseman fell onto an angle iron, but he did not see him fall into the pit. For purposes of this motion, however, this discrepancy is irrelevant.

claim against Cousins is for employer intentional tort (Count VII). Count VIII is Glenda Wiseman's loss of consortium claim.

## II

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47–48, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794.

The Sixth District Court of Appeals has consistently held that motions for summary judgment should be granted with caution in order to protect the nonmoving party's right to trial. As stated by the court in *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 14–15, 467 N.E.2d 1378, 1386:

"We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and inferences. * * * It is settled law that '[t]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, * * *' which party in the instant case is appellant. * * * It is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." (Citations omitted.) See, also, *Bowlds v. Smith* (1961), 114 Ohio App. 21, 29, 18 O.O.2d 305, 309–310, 180 N.E.2d 184, 189–190.

## III

The first issue is whether GM is entitled to summary judgment on Wiseman's claims against it. Counts I through III will be discussed together, as those counts all call into play R.C. 4101.11, the "frequenter statute."

R.C. 4101.11 provides:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

In construing this statute, the Ohio Supreme Court held:

"The duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165, syllabus.

 A limited exception exists where the one employing the independent contractor actually participated in the job process. According to the Ohio Supreme Court:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus.

 Conversely, an employer who engages an independent contractor but who does not actively participate in the job operation does not, merely by virtue of its supervisory capacity, owe a duty to employees of the independent contractor who are injured while engaging in inherently dangerous work. *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, syllabus. Merely including "boilerplate" language pertaining to job safety and monitoring the activities of subcontractors in order to ensure compliance with specifications does not constitute "active" or "actual" participation. See *Cafferkey, supra,* at 113, 21 OBR at 418–419, 488 N.E.2d at 192.

 In this case, based on all the evidence of record, reasonable minds could differ on whether GM actively or actually participated in Cousins' operations. Therefore, GM's motion for summary judgment will be denied as to Counts I, II, and III, as those counts all depend on GM having actively participated in Cousins' job operations.

■ Count IV is based on 2 Restatement of the Law 2d, Torts (1965), Section 424. The Sixth District Court of Appeals has held:

"The employee of an independent contractor[,] or that employee's representative, is not included in the group of persons who may base a negligence claim against a landowner, who has employed such independent contractor, [under] 2 Restatement of the Law 2d, Torts (1965), Section 416 or 424." *Curless v. Lathrop Co.* (1989), 65 Ohio App.3d 377, 583 N.E.2d 1367, paragraph two of the syllabus, jurisdictional motion overruled (1990), 49 Ohio St.3d 718, 552 N.E.2d 951.

Since Wiseman is not in the class of persons who may bring such a claim, GM's motion for summary judgment will be granted as to Count IV.

Counts V and VI allege products liability claims against GM. In his memorandum in opposition to GM's motion for summary judgment, Wiseman states:

"IV. Summary Judgment as to Products Liability Claims

"Plaintiff does not intend at this point to oppose the motions for summary judgment on plaintiff's sixth claim concerning the allegations of products liability."

While Wiseman specifically mentions only Count VI, both Counts V and VI allege products liability claims. Since Wiseman does not provide an argument on either Counts V or VI, and since the heading to this portion of Wiseman's memorandum reads "Summary Judgment as to Products Liability Claims," the above-quoted statement will be taken as a concession as to both Counts V and VI. There being no material facts in dispute relating to Counts V and VI, GM is entitled to summary judgment on those claims.

## IV

■ The next issue is whether Cousins is entitled to summary judgment on the employer intentional tort claim (Count VII), the only claim against it. Generally, an employer is immune from civil actions for personal injuries sustained by its employees if the employer has complied with R.C. 4123.35. R.C. 4123.74 provides:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury,

occupational disease, bodily condition, or death is compensable under this chapter."

However, an employer's immunity does not extend to injuries *intended* by the employer. *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, syllabus, certiorari denied (1982), 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110. Relying on the Restatement,[2] the Ohio Supreme Court has recently held that the following must be demonstrated to establish intent:

" * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, as modified.

The Supreme Court in *Fyffe* also addressed the proof necessary to establish intent. According to the court:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at paragraph 2 of the syllabus, citing *Van Fossen, supra,* as modified.

In developing the intentional tort standard, the Ohio Supreme Court cited with approval the analysis of the New Jersey Supreme Court. According to that court, in determining intent:

" 'Courts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the circumstances on which it was inflicted on the worker, fairly be viewed as

---

2. See 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A.

a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act?' (Emphasis *sic.*)" *Van Fossen, supra,* 36 Ohio St.3d at 116, 522 N.E.2d at 503, quoting *Millison v. E.I. du Pont de Nemours & Co.* (1985), 101 N.J. 161, 178–179, 501 A.2d 505, 514.

Turning to the *Fyffe* criteria, the parties appear to dispute whether the Lordstown plant was dangerous. Wiseman testified that it was and that he complained to his supervisor about the dangers. Two other Cousins employees, however, Douglas Winters and Martin Stevens, testified that the plant was not dangerous. Therefore, a dispute of fact exists as to the first prong of the *Fyffe* test. As to the second prong, by presenting evidence that another employee was injured the same day as Wiseman while performing the same work, Wiseman has come forward with enough evidence to create a triable issue as to the second prong of the *Fyffe* test. See *Whitlock v. Ent. Metal Serv., Inc.* (Nov. 4, 1994), Lucas App. No. L–94–115, unreported, 1994 WL 602926. Similarly, Wiseman's testimony that he informed his supervisor of the dangers but was told to continue working anyway is sufficient to create a triable issue as to the third prong of the *Fyffe* test. Accordingly, Cousins is not entitled to summary judgment on the intentional tort claim against it (Count VII).

## V

Count VIII is Glenda Wiseman's loss of consortium claim. Glenda Wiseman's claim is derivative of her husband's claims. See *Messmore v. Monarch Machine Tool Co.* (1983), 11 Ohio App.3d 67, 68–69, 11 OBR 117, 118–119, 463 N.E.2d 108, 110. Since many of Wiseman's claims against GM remain pending, GM is not entitled to summary judgment on Glenda Wiseman's loss of consortium claim. Similarly, since Wiseman's claim against Cousins remains pending, Cousins is not entitled to summary judgment on Glenda Wiseman's loss of consortium claim.

## JOURNAL ENTRY

It is ordered that the motion for summary judgment filed by defendant General Motors Corporation is denied as to Counts I, II, III, and VIII of the plaintiff's complaint and granted as to Counts IV, V, and VI of the plaintiff's complaint.

It is further ordered that the motion for summary judgment filed by defendant Cousins Waste Control Corporation is denied.

*Judgment accordingly.*