OPINION JUDGMENT ENTRY
{¶ 1} Plaintiffs Rex and Rayonna Leiner appeal a judgment of the Court of Common Pleas of Stark County, Ohio, which directed a verdict in favor of defendant Brewster Dairy, Inc. after plaintiffs rested their case. Appellants assign three errors to the trial court:
 {¶ 2} "The trial court erred in its granting of defendant's directed verdict motion.
 {¶ 3} "The trial court erred in failing to grant plaintiffs' motion for directed verdict on defendant's waiver of defense asserting lack of duty owed to plaintiffs and defense that alleged hazard was open and obvious.
 {¶ 4} "The trial court erred in its dismissal of plaintiffs' claims for spoliation of evidence on summary judgment."
 {¶ 5} The evidence at trial was largely undisputed. Appellant was employed by Sidle Transit Services, Inc. as a milk tanker truck driver. Appellant was not an employee or an independent contractor of appellee Brewster Dairy. On May 1, 2001, after making a milk delivery to Brewster Dairy, appellant pulled his employer's tanker truck into a pump and wash facility located on the premises of Brewster Dairy. At the time of the accident, the transporters and haulers were required by the Ohio Administrative Code to sanitize their dairy tankers after each day's use and within 24 hours prior to loading. Sidle Transit was responsible for washing and sanitizing its trucks, but Brewster Dairy provided the facility, wash equipment, and cleansing solutions the truck drivers delivering milk to the dairy used to sanitize the trucks. After completing the cleaning, the driver received a "wash ticket" from Brewster Dairy, certifying the truck was cleaned and sanitized.
 {¶ 6} Brewster Dairy admitted it owned, maintained, fixed, repaired, updated, and troubleshooted the cleaning system and an employee of Brewster Dairy would explain the use of the equipment to the truck driver as necessary. The employee of Brewster Dairy would initiate the pumping of the milk from the truck, and would also turn on the cleaning system. If the milk hauler was unwilling or incapable of operating the equipment, Brewster Dairy employees would assist or do it for them.
 {¶ 7} The equipment in use during the time in question was located in one of two receiving bays. There were hoses to be connected to the delivery tanker to pump the milk out. The transfer hoses must be disconnected, and if the milk hauler wishes to sanitize his truck at Brewster Dairy, he attaches the cleansing system hoses to the truck.
 {¶ 8} The bays themselves were wet and very noisy. The arrangement of the bays required the operator to climb onto the side of the truck onto a platform 18 to 24 inches wide in order to clean with a soapy solution. Appellants' safety expert testified the system permitted run off leakage down the side of the stainless steel trucks, which would create slipping and tripping hazards, and Brewster Dairy knew this.
 {¶ 9} The "cat walk" or platform was approximately 12 feet above the cement floor of the bay, and had no guard rail or fall protection and no safety harness. On the day in question, appellant had finished cleaning his truck, and was walking on the cat walk back to the ladder to climb down when he observed a clear stream of cleaning fluid squirting out. He first observed the stream just as he was stepping into it, and was unable to catch himself or prevent himself from falling to the cement floor of the bay. Appellant suffered severe injuries, including multiple open and close fractures of his arms, torn ligaments in his ankle, and a traumatic permanent brain injury.
 {¶ 10} Our standard of reviewing a trial court's judgment on a motion for directed verdict is de novo, because the motion presents a question of law, Wagner v. Roche Laboratories,
(1996), 77 Ohio St.3d 116. This means we apply the same standard the trial court used in determining the merits of the motion. Pursuant to Civ. R. 50(A), the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed and must find upon any determinative issue reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. If there is evidence from which reasonable minds could reach different conclusions on any issue, the issue must be submitted to the jury, Strother v. Hutchinson (1981), 67 Ohio St.2d 282.
 {¶ 11} The trial court's judgment entry granting the motion for directed verdict cites us to the trial court's oral statements on the record. The court noted it was an extremely tough decision because it personally believed Brewster Dairy should have done more, but the court found the case law required the court find the appellee owed no duty to appellant. The court found the drivers and owner of the trucking business understood it was an inherently dangerous task in the dairy business and Brewster Dairy's involvement was to provide the apparatus which the company and the driver could use at their choice. The court also found there was no evidence Brewster Dairy actively participated in the activities.
 I {¶ 12} In their first assignment of error, appellants challenge the trial court's grant of the directed verdict, arguing the trial court was incorrect in finding there was no duty as a matter of law. The trial court cited Armstrong v. BestBuy Company, Inc., 99 Ohio St.3d 79, 2003-Ohio-2573,788 N.E.2d 1088, as authority for the proposition the open and obvious doctrine remains viable in Ohio. The court held when a danger is open and obvious, a land owner owes no duty of care to individuals lawfully on the premises. In Armstrong, a customer fell and injured himself on a shopping cart guard rail bracket. The Supreme Court articulated the certified question before it as whether case law has abrogated the open and obvious doctrine as a complete bar to recovery, and instead requires courts to apply the principles of comparative negligence. The Supreme Court noted the open and obvious doctrine is not an issue related to causation, but rather addresses a landowner's duty to persons injured on the property.
 {¶ 13} The Supreme Court in Armstrong discussed the rationale underlying the open and obvious doctrine. The rationale is that the open and obvious nature of the hazard itself serves as a warning, and thus, the owner or occupier may reasonably expect the persons entering the premises will discover the dangers and take appropriate measures to protect themselves,Armstrong at 80, citing Simmers v. Bentley ConstructionCompany (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. The court noted a shopkeeper owes a duty to its business invitees to exercise ordinary care in maintaining the premises in a reasonably safe condition, and has a duty to warn of latent or hidden dangers, Id., citations deleted. The court found that when the doctrine of open and obvious is applicable, it obviates the duty to warn and acts as a complete bar to any negligence claim.
 {¶ 14} It is clear from Armstrong there are two sorts of considerations in operation here. The first is the issue of whether the premises owner has breached its duty of ordinary care in maintaining its premises in a reasonably safe condition. If it has not, then if there is an open and obvious danger which the invitee is able to perceive and protect himself against, then the premises owners have not breached any duties. The open and obvious doctrine clearly does not hold a premises owner can maintain the premises in an unreasonably dangerous way and then claim the invitee should have avoided the dangers.
 {¶ 15} Although appellants alleged there was a stream of disinfecting solution spraying onto the catwalk, there was no evidence presented regarding why this occurred. Appellants were unable to identify any negligence in how Brewster Dairy maintained the equipment, nor were they able to show the dairy knew or should have known there was a possible malfunction in the hoses or other equipment. Appellants are unable to show Brewster Dairy breached its duty of maintaining its premises in a reasonably safe condition.
 {¶ 16} The trial court found the task of cleaning and disinfecting the tanker was inherently dangerous, given that the operator had to mount the truck and perform the cleaning from a narrow catwalk under unavoidably wet conditions. The court found the hazards inherent in the activity were open and obvious, and the invitees required no warning to perceive them. The sole question which remains is whether Brewster Dairy actively participated in the activity.
 {¶ 17} The case Sopkovich v. Ohio Edison Company,81 Ohio St.3d 628, 1998-Ohio-341, 693 N.E.2d 233 is instructive. InSopkovich, the Morakis Sons Industrial Painting Company entered into a contract with Ohio Edison to paint one of its electrical substations. The parties agreed Morakis was an independent contractor. On July 15, 1987, Michael Lexie, one of Morakis' employees, sustained severe injuries when he came into contact with high voltage electricity while painting. Ohio Edison maintained an on-site representative, who conferred with Morakis Sons' supervisor regarding which conductors were energized and which had been deactivated. Morakis would then convey the information to its painters. At all relevant times, Ohio Edison retained exclusive control over the determination of which electrical circuits or lines would be de-energized, and had exclusive control over the process of activating and de-activating the lines. On the day in question, Lexie painted beams located approximately 30-40 feet off the ground. After completing the task, Lexie attempted to descend from the structure, but received a massive electrical shock, which threw him to the ground. Plaintiff's theory of the case was that although Lexie had not touched any hot electrical wires, nevertheless, there were active lines all around him which apparently had arced.
 {¶ 18} Interestingly, on the day of the accident, Lexie had complained to Morakis that the area was dangerous, and asked the Ohio Edison on-site supervisor to put warning flags on the lines to help the painters distinguish between the energized and de-energized areas. Ohio Edison replied they did not have any flags, and Morakis instructed Lexie to proceed with the work.
 {¶ 19} Lexie's complaint against Ohio Edison claimed Ohio Edison had failed to provide a safe place of employment, eliminate known hazards, supervise the work activities, install proper safety devices, and de-energize the electrical lines involved in the accident. Ohio Edison defended arguing it had not actively participated in the painting. Ultimately, the trial court granted summary judgment in favor of Ohio Edison. On appeal, the court of appeals held there were two separate sets of facts which can create a duty of care under active participation analysis. One is active participation through the direction or control of the performance of work activities while the other is active participation through the exertion or retention of control over a critical variable in the work environment. The Supreme Court agreed with the Court of Appeals and discussed at some length the evolution of its case law. The Supreme Court citedSchwarz v. General Electric Realty Corporation (1955),163 Ohio St.3d 56 O.O. 319, 126 N.E.2d 609, as holding an employee of an independent contractor is an invitee of the owner of the premises, and the owner owes the employee the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use, but the duty does not extend to any inherent hazards necessarily present because of the character of work to be done.
 {¶ 20} Ohio Edison did not defend using the open and obvious doctrine even though it was clear Lexie was able to perceive the dangerous conditions. Because Ohio Edison actively participated in the painting by choosing which lines should be de-energized, it had a duty to use ordinary care in doing so.
 {¶ 21} In the case of Wellman v. East Ohio Gas Company
(1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, the Ohio Supreme Court set forth the general rule that where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger, and one of the contractor's employees is injured, the property owner is not liable to the independent contractor's employee. Instead, it was the independent contractor's duty to warn and protect its employees.
 {¶ 22} In the later case of Hirschbach v. Cincinnati Gas Electric Company (1983), 6 Ohio St.3d 206, 452 N.E.2d 326, the Ohio Supreme Court explained this general rule, in terms of the active participation doctrine. The Supreme Court explained where the property owner has sole control over the safety features necessary to eliminate the hazard, has refused to eliminate the hazard, and has participated in the job operation by dictating the manner and mode in which a phase of the job was to be performed, then it cannot avoid liability or shift it to an independent contractor. This is contrasted with Cafferkey v.Turner Construction Company (1986), 21 Ohio St.3d 110,488 N.E.2d 189, which stood for the proposition a contractor who has not actively participated in the subcontractor's work does not owe a duty of care to the employees of the subject contractor who are injured while engaged in inherently dangerous work. It is the concept of "inherently dangerous work" that is the pitfall here.
 {¶ 23} In the case at bar, the trial court stated: "The dangerous-inherently dangerous nature of having this walk way and knowing the dairy business and moisture involved in that is all known to the transport company and driver. It is widest, inherently dangerous * * * it's the fact that it was inherently dangerous, that in fact the activity of climbing that truck and walking across the cat walk in a moist situation there was nothing done initially by the defendant company * * * their involvement was they provided the apparatus, the location where it could be done, * * *" Tr. of Proceedings, V. 4, at 185.
 {¶ 24} Appellants must argue Brewster Dairy actively participated by retaining control over a critical variable in the work environment, namely the equipment to be used. Even if we were to agree with this proposition, appellants still cannot show how the dairy was negligent in its active participation in this activity.
 {¶ 25} We find the trial court did not err in finding Brewster Dairy owed no duty of care to appellant. Brewster Dairy did not actively participate in the activities which caused appellants' injuries. The first assignment of error is overruled.
 II {¶ 26} In their second assignment of error, appellants argue the trial court erred in not granting their motion for directed verdict because appellee waived its defense of lack of duty and open and obvious.
 {¶ 27} Appellants argue both lack of duty and the open and obvious doctrine are affirmative defenses which must be pled or they are waived. Civ. R. 12 sets forth some affirmative defenses, but there are others. The Supreme Court has defined an affirmative defense as a new matter which, assuming the complaint to be true, constitutes a defense to it, State ex rel. PlainDealer Publishing Company v. Cleveland (1996),75 Ohio St.3d 31, 661 N.E.2d 187, citations deleted. Appellants cited us to various appellate decisions which refer to the open and obvious doctrine as an affirmative defense.
 {¶ 28} Considering the Supreme Court's discussion of the nature of the open and obvious defense contained in Armstrong,
supra, we find the trial court's decision hinged on the issue of duty. Lack of a duty owed to the plaintiff is not an affirmative defense, and under notice pleading, an answer which denies the allegation places this at issue for the plaintiff to prove.
 {¶ 29} The second assignment of error is overruled.
 III {¶ 30} In their third assignment of error, appellants argue the trial court should not have dismissed its claims for spoliation of evidence by summary judgment. In their statement regarding the summary judgment, made pursuant to Loc. App. R. 9, appellants argue genuine issues of material fact existed, making the question an issue for the jury to decide.
 {¶ 31} Our standard of reviewing a motion for summary judgment is de novo, see Grafton v. Ohio Edison Company (1999),77 Ohio St.3d 102, 671 N.E.2d 241. Pursuant to Civ. R. 56(C), summary judgment may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The trial court may not resolve ambiguities in evidence, and must construe all reasonable inferences arising from undisputed facts in favor of the non-moving party, Id.
 {¶ 32} During the course of discovery, appellee denied appellant was injured while sanitizing his tanker truck, and produced a receipt that indicated that he had not done so. Brewster Dairy asserted the wash records which would have clarified the matter had been lost. In February of 2003, appellee produced a record from its computer data base claiming there had been a computer programming error, and explained that the records were incomplete because of the disturbance and confusion after appellant fell. Brewster Dairy also explained the milk receiver had entered the wrong information into the computer, and so the system automatically registered no wash and sanitizing was done. Brewster Dairy asserted all documents were provided in discovery as they became available, and it did not intentionally conceal any evidence or discard it.
 {¶ 33} We find the record contains no evidence Brewster Dairy did not comply with discovery, or deliberately withheld evidence. Accordingly, the trial court correctly granted the summary judgment.
 {¶ 34} The third assignment of error is overruled.
 {¶ 35} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 {¶ 36} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellants.