OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Douglas and Pamela Caldwell, appeal five decisions of the Mahoning County Court of Common Pleas. The first decision denied their motion to amend their complaint. The second decision denied their motion to vacate the judgment denying their motion to amend their complaint. The third decision denied a renewed motion to amend the complaint. The fourth decision granted summary judgment to Defendant-Appellee, SENEX Explosives, Inc. on the Caldwells' employer intentional tort claim. The fifth decision granted summary judgment to the remaining Defendants-Appellees, Petersburg Stone Company, Inc., William Catlett, and Rod Catlett (collectively the Petersburg Defendants). The Caldwells raise three sets of issues on appeal.
 {¶ 2} First, the Caldwells claim the trial court erred when it granted summary judgment to Senex, but they are incorrect. R.C. 4123.54(G) states that another state's laws are the exclusive remedy for an injury covered by that state's workers' compensation laws. In this case, the employee is receiving workers' compensation benefits from Pennsylvania and that state does not recognize employer intentional tort claims. Thus, the Caldwells' claim against Senex is barred.
 {¶ 3} Second, the Caldwells contend that the trial court abused its discretion when it repeatedly refused to allow them to amend their complaint. The Caldwells' original complaint contained both allegations that the Petersburg Defendants violated numerous federal regulations and a catch-all allegation that they violated "other regulations and guidelines pertaining to the safety of surface mines and surface miners." In their amended complaint, the Caldwells wished to include an allegation that the Petersburg Defendants violated another specific federal regulation. Since the original complaint's catch-all allegation would allow the Caldwells to introduce evidence of this additional violation, the Caldwells' motion to amend was unnecessary and the trial court did not abuse its discretion when denying that motion.
 {¶ 4} Third, the Caldwells argue the trial court erred when it granted summary judgment to the Petersburg Defendants on the issue of duty. A landowner owes no duty to the employee of an independent contractor if that employee's work is inherently dangerous unless the landowner actively participates in that employee's work. In this case, the Petersburg Defendants actively participated in Mr. Caldwell's inherently dangerous work by directly assisting his work activities. However, the duty the Petersburg Defendants owe due to their active participation is limited to the scope of that participation and it does not appear that the Petersburg Defendants owed Mr. Caldwell any other duty of care.
 {¶ 5} For these reasons, the trial court's judgment is affirmed in part, reversed in part, and this matter is remanded for further proceedings.
 Facts {¶ 6} The Caldwells are residents of Pennsylvania. Mr. Caldwell was employed by Senex, a Pennsylvania corporation with its principal place of business in Pennsylvania. Senex was engaged in the blasting business and sent its employees to various states, including Ohio.
 {¶ 7} The Catletts, Ohio residents, are the owners and operators of Petersburg Stone, an Ohio corporation, which in turn owned and operated a rock quarry in Petersburg, Ohio. The Petersburg Defendants contracted with Senex to blast some of the limestone in their quarry so it could be extracted. Senex sent Mr. Caldwell, an experienced blaster, to oversee the blast. Unfortunately, the blast misfired, which left a large pile of rubble, known as a muck pile, containing both rock and undetonated explosives next to the high wall of unblasted rock. The Petersburg Defendants could not use the rock in the pile because of the danger posed by the undetonated explosives.
 {¶ 8} The muck pile was not cleaned up immediately, but the Petersburg Defendants eventually asked Senex to locate and remove the explosives from the muck pile so the Petersburg Defendants could use the rock. Since Mr. Caldwell was the blaster involved in the misfire, he was sent to the site to remove the explosives. Mr. Caldwell could not locate and remove all of the explosives without assistance since they were buried within a pile of rock, so the Petersburg Defendants instructed one of their employees to assist Mr. Caldwell. That employee operated a front end loader to remove rock from the muck pile. Mr. Caldwell would then search through those rocks for explosives. Once his search was completed, the employee would move the rocks to the crusher.
 {¶ 9} On January 16, 1998, Mr. Caldwell was searching for explosives with the assistance of the Petersburg Defendant's employee when he was injured by a boulder which unexpectedly dislodged and crushed his right leg. Mr. Caldwell received workers' compensation benefits in Pennsylvania as a result of this accident. After Mr. Caldwell's injury, the rock quarry was sold to a different company.
 {¶ 10} The Caldwells filed their initial complaint on January 14, 2000, in Case Number 2000 CV 00117. That complaint alleged that Senex committed an employer intentional tort, that the Petersburg Defendants were negligent, and that the Petersburg Defendants were strictly liable for their injuries. The complaint also alleged claims against the manufacturer of the explosives, and the current owner of the rock quarry as defendants. The Caldwells were never able to obtain service against any of the Petersburg Defendants within one year after their complaint was filed, so they were dismissed from the action without prejudice on July 17, 2001.
 {¶ 11} Eventually, the remaining defendants all moved for summary judgment. The trial court granted each of those motions and the Caldwells appealed those decisions to this court on January 10, 2002. On appeal, this court, in a decision styledCaldwell v. Petersburg Stone Co., 7th Dist. No. 02 CA 8, 2003-Ohio-3275 (Caldwell I), affirmed the trial court's decisions granting summary judgment to the current owner of the rock quarry and to the manufacturer of the explosives, but reversed the trial court's decision granting summary judgment to Senex. This court concluded that there were genuine issues of material fact regarding whether Senex committed an employer intentional tort against Mr. Caldwell. Id. at ¶ 61. In reaching this conclusion, this court recognized that there were choice of law issues, but stated that those issues would "become a matter for the trial court to resolve on remand." Id. at ¶ 22-32.
 {¶ 12} While the litigation in Case Number 2000 CV 00117 was proceeding, the Caldwells filed a new complaint in Case Number 2001 CV 02228 on August 22, 2001. That complaint contained basically the same allegations against Senex, the Petersburg Defendants, and the explosives' manufacturer as those contained in the complaint filed in Case Number 2000 CV 00117. This complaint contained no allegations regarding the current owner of the rock quarry. This complaint alleged, among other things, that the Petersburg Defendants were negligent for "violating other regulations and guidelines pertaining to the safety of surface mines and surface miners." On September 24, 2002, the trial court dismissed the claims against Senex and the manufacturer of the explosives in Case Number 2001 CV 02228 with prejudice since those claims were no different than the ones resolved in Case Number 2000 CV 00117.
 {¶ 13} On April 28, 2004, the trial court consolidated the claim remaining against Senex in Case Number 2000 CV 00117 and the claims against the Petersburg Defendants in Case Number 2001 CV 02228 into Case Number 2000 CV 00117. That entry also set forth a new scheduling order, which provided that the parties exchange all experts' reports by July 15, 2004, that discovery be completed by October 31, 2004, and that the matter would proceed to trial on January 24, 2005. It also allowed the parties until August 1, 2004, to amend their pleadings.
 {¶ 14} Subsequently, the Caldwells moved to amend their complaint to include an allegation that the Petersburg Defendants violated 30 C.F.R. 56.9314. The motion was signed on August 1, 2004, and its certificate of service indicates it was mailed to the opposing parties on August 1, 2004. However, the motion was not time-stamped until August 5, 2004. The Petersburg Defendants opposed the Caldwells' motion to amend and the trial court denied the motion on August 26, 2004.
 {¶ 15} The Caldwells moved to vacate the trial court's August 26th judgment entry on September 22, 2004, contending that the Petersburg Defendants were no more prejudiced by the fact that the motion to amend was filed on August 5th than they would have been had that motion been filed on August 1st. They also appealed from the trial court's August 26th entry on September 24, 2004.
 {¶ 16} On October 14, 2004, in Caldwell v. Petersburg StoneCo., 7th Dist. No. 04 MA 223, we dismissed that appeal for a lack of a final, appealable order. We determined that the Caldwells' amendment "does not state a new cause of action." Rather, we held that "[t]he proposed amendment in this case merely states another basis on which to find the defendants' negligent." The trial court denied the Caldwells' motion to vacate the next day.
 {¶ 17} The Caldwells then filed a renewed motion to amend their complaint to include the allegation that the Petersburg Defendants violated 30 C.F.R. 56.9314 on November 15, 2004. The trial court denied that motion on December 15, 2004.
 {¶ 18} Senex filed a motion for summary judgment on November 30, 2004, which addressed the choice of law issue this court recognized in Cadlwell I. In that motion, Senex argued that Pennsylvania's workers' compensation statutes bar employer intentional tort claims. It further argued that Pennsylvania law should govern those claims for a variety of reasons. The Caldwells opposed this motion, arguing that Ohio law should apply, in large part because it is the site of the injury. The trial court granted Senex's motion for summary judgment on December 22, 2004.
 {¶ 19} Meanwhile, the Petersburg Defendants moved for summary judgment on December 10, 2004, arguing that they owed Mr. Caldwell no duty. The Caldwells argued that the Petersburg Defendants owed them a duty since, among other things, they actively participated in Mr. Caldwell's work activities. The trial court granted the Petersburg Defendants' motion on January 6, 2005.
 {¶ 20} On January 14, 2005, the Caldwells appealed each of the entries relating to their attempts to amend the complaint as well as the trial court's decisions granting summary judgment to the defendants.
 Summary Judgment to Senex {¶ 21} In Caldwell I, this court recognized that there was a choice of law issue, but refused to address the substance of that claim at that time. More specifically, this court stated:
 {¶ 22} "As an initial matter, there appears to be a conflict of law question as to whether Ohio or Pennsylvania law should govern this matter. Although Senex did raise this issue in the trial court, claiming that Pennsylvania law barred Appellant's intentional tort action, the trial court did not address the claim explicitly. While one might conclude that implicitly, at least, the court appears to have rejected this claim by failing to address it, given the fact that we must remand the matter the court will undoubtedly be forced to revisit this issue. Under Pennsylvania law employers are immune from intentional torts. SeePoyser v. Newman Co., Inc. (1987), 514 Pa. 32, 522 A.2d 548. If the trial court finds that Pennsylvania law controls, then Appellant's intentional tort action against Senex would necessarily fail." Id. at ¶ 22.
 {¶ 23} On remand, Senex moved for summary judgment on this issue and the trial court granted that motion. In the fourth of their five assignments of error, the Caldwells argue as follows:
 {¶ 24} "The trial court erred in its December 22, 2004 Order sustaining Appellee-Defendant SENEX Explosives, Inc.'s Motion for Summary Judgment on the conflict of law issue.
 {¶ 25} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. Of course, this court's review of the trial court's choice of law determination would be de novo, regardless of the case's procedural posture. Bertram v. Norden,159 Ohio App.3d 171, 2004-Ohio-6044, at ¶ 15.
 {¶ 26} Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doev. Shaffer (2000), 90 Ohio St.3d 388, 390. A fact is material when it affects the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304.
 {¶ 27} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in her favor. Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, 386. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296. The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 28} In most situations, a court would apply Ohio's common law choice of law to issues like the present one. However, courts should only apply those common law rules in the absence of a statutory directive. Caldwell I at ¶ 24. In this case, R.C.4123.54(G) directs us to apply Pennsylvania law since Mr. Caldwell is a Pennsylvania resident and insured by Pennsylvania's workers' compensation laws. That statute provides as follows:
 {¶ 29} "If an employee is a resident of a state other than this state and is insured under the workers' compensation law or similar laws of a state other than this state, the employee and the employee's dependents are not entitled to receive compensation or benefits under this chapter, on account of injury, disease, or death arising out of or in the course of employment while temporarily within this state, and the rights of the employee and the employee's dependents under the laws of the other state are the exclusive remedy against the employer on account of the injury, disease, or death."
 {¶ 30} The Caldwells are Pennsylvania residents and are insured under Pennsylvania's workers' compensation laws. Furthermore, Mr. Caldwell was injured while temporarily within this state. Thus, this section prevents the Caldwells from receiving workers' compensation benefits in Ohio and provides that Pennsylvania's laws "are the exclusive remedy against the employer" for the Caldwells' injuries.
 {¶ 31} The plain language of this statute resolves the choice of law issue in this case. The injury referred to in R.C.4123.54(G) is the same injury regardless of the theory of recovery being pursued. Mr. Caldwell had his leg seriously injured. His workers' compensation claim and his claim for an employer intentional tort are merely different ways of being compensated, or remedies, for that same injury. R.C. 4123.54(G) does not distinguish between the various theories of recovery available to compensate a person for their injuries. Instead, it provides that the other state's laws shall provide the exclusive remedy to the injury. Thus, when that statute is applied to this case, Pennsylvania law must apply to the Caldwells' claims against Mr. Caldwell's employer, Senex. The trial court properly granted summary judgment to Senex since Pennsylvania does not recognize a claim for an employer intentional tort. The Caldwells' claims to the contrary are meritless.
 Amending Complaint {¶ 32} In their first three assignments of error, the Caldwells argue as follows:
 {¶ 33} "The trial court erred in its August 26, 2004 Order overruling Plaintiffs' Motion for Leave to File Amended Complaint."
 {¶ 34} "The trial court erred in its October 15, 2004 Order overruling Plaintiffs' Motion to Vacate the August 26, 2004 Order."
 {¶ 35} "The trial court erred in its December 15, 2004 Order overruling Plaintiffs' Renewed Motion for Leave to File Amended Complaint Based on Additional Facts and Circumstances."
 {¶ 36} The Caldwells contend the trial court erred by not allowing them to amend their complaint to include a claim based on the fact that the Petersburg Defendants violated30 C.F.R. 56.9314. The Caldwells' address these three assignments of error jointly in their brief since they all deal with the same issues of law and fact. We will do likewise.
 {¶ 37} Civ.R. 15 governs amendments to pleadings. Civ.R. 15(A) provides, in relevant part:
 {¶ 38} "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."
 {¶ 39} The Caldwells' motion was not filed in a timely manner. On April 28, 2004, a magistrate consolidated Case Number 00-CV-117 with 01-CV-2228. That entry also established a new scheduling order, which provided that "all amendments to pleadings, cross-claims, counterclaims, and third-party claims must be filed by August 1, 2004." August 1, 2004, was a Sunday, so the amendments had to be filed by August 2, 2004. The Caldwells did not file their motion to amend their complaint until August 5, 2004, even though the certificate of service indicated it was served on the other parties on August 2, 2004.
 {¶ 40} Civ.R. 15(A) "favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed."Wilmington Steel Products, Inc. v. Cleveland Elec. IlluminatingCo. (1991), 60 Ohio St.3d 120, 122. Furthermore, it gives a trial court broad discretion when ruling on a motion to amend a complaint and a reviewing court's "role is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." Id. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-0122.
 {¶ 41} A trial court's primary concerns when considering a request to amend a pleading are whether the amendment is sought in bad faith, is a delaying tactic, or whether there is actual prejudice to the defendants because of the delay. Darby v.A-Best Products Co., 102 Ohio St.3d 410, 2004-Ohio-3720, at ¶20; Hoover v. Sumlin (1984), 12 Ohio St.3d 1, paragraph two of the syllabus. Although the timeliness of a motion to amend is important, the time alone is generally insufficient reason for denying a motion to amend; courts must focus on the actual prejudice to the opposing party. Schweitzer v. RiversideMethodist Hospitals (1996), 108 Ohio App.3d 539, 546.
 {¶ 42} In this case, it does not matter whether the trial court allowed the amendment since the Caldwells' original complaint contained a catch-all allegation which included the specific allegations they sought to include with this amendment. In their original complaint, the Caldwells alleged that the Petersburg Defendants violated a variety of specific federal regulations and that those violations caused their injuries. In addition to those specific allegations, the Caldwells alleged that the Petersburg Defendants "violat[ed] other regulations and guidelines pertaining to the safety of surface mines and surface miners" and that those violations also caused their injuries.
 {¶ 43} The Caldwells' amended complaint contains one single new allegation, that the Petersburg Defendants "fail[ed] to correct and trim hazardous stockpile and muckpile faces, in violation of 30 C.F.R. 56.9314" and that this violation caused their injuries. This new allegation did not state a new basis for recovery. Instead, it merely pled the allegations contained within the catch-all allegation with more particularity.
 {¶ 44} The Sixth District was faced with a similar situation in Gottfried-Smith v. Gottfried (1997), 119 Ohio App.3d 646. In that case, the appellant argued, among other things, that the trial court abused its discretion when it denied her motion to amend her complaint. The appellate court confirmed the trial court's decision since the proposed amendment only sought to plead the original claims with more particularity.
 {¶ 45} "Appellant did not present any facts to support any new matter to be pleaded. Instead, she asked to plead the cause of action already filed with more particularity. As the trial court correctly noted, Civ.R. 8 permits notice pleading in this state. Accordingly, no need existed for appellant to plead her same cause of action with more particularity and no purpose would be served if the motion to file an amended complaint were granted." Id. at 653.
 {¶ 46} The Caldwells, like the appellant inGottfried-Smith, are not trying to amend their complaint to plead a new matter. Instead, their amendment was merely pleading the matters already before the court with more particularity. Because Civ.R. 8 permits notice pleading, this is unnecessary.
 {¶ 47} The Caldwells acknowledged that they believed this to be the case at oral argument, stating that they filed their motions to amend and assigned these errors in the event that we failed to agree that their catch-all provision included the more particular allegation contained in their proposed amended complaint. We understand the Caldwells' desire to protect themselves against that possibility, but it was unnecessary to do so in this case. There is no proper legal basis to prevent them from presenting evidence of a violation of 30 C.F.R. 56.9314 and the trial court would have abused its discretion if it had refused to allow them to present that evidence. Although the Caldwells' first three assignments of error arguing to the contrary are meritless, this is only because the Caldwells did not need the trial court to grant the motion to amend to introduce evidence related to this more particular allegation.
 Summary Judgment to the Petersburg Defendants {¶ 48} In their fifth assignment of error, the Caldwells argue as follows:
 {¶ 49} "The trial court erred in its January 6, 2005 Order sustaining the Motion for Summary Judgment of Appellees-Defendants Petersburg, Inc.; William Catlett; Rodney Catlett, individually and t/d/b/a the Petersburg Stone Company, a/k/a the `Rock Quarry Defendants,' or the `Quarry Defendants' as to duty of care."
 {¶ 50} The Caldwells contend the trial court erred for the following five reasons: 1) the Petersburg Defendants owed Mr. Caldwell a duty of care even though he was an employee of an independent contractor since they actively participated in his work activities; 2) the Petersburg Defendants owed him a duty since they had actual knowledge of a dangerous work condition; 3) the Petersburg Defendants owed Mr. Caldwell a duty of care since they actually know of the dangerous condition; 4)30 C.F.R. 56.9314 establishes a duty of care; and, 5) the Petersburg Defendants' reckless conduct, rather than the inherently dangerous nature of Mr. Caldwells' work, caused his injuries.
 {¶ 51} In response, the Petersburg Defendants claim that much of the evidence the Caldwells rely upon was not properly before the trial court. They then argue that they did not actively participate in Mr. Caldwell's work and that they did not have actual knowledge of a dangerous condition. Next, the Petersburg Defendants contend that the Caldwells are trying to use30 C.F.R. 56.9314 to improperly preempt Ohio tort law. Finally, the Petersburg Defendants piggy-back on Senex's argument and claim that the Caldwells' claims against them are also barred by Pennsylvania's workers' compensation statutes.
 {¶ 52} The Petersburg Defendants' argument that the Caldwells' claim is barred by the Pennsylvania workers' compensation statutes would make the arguments related to the existence of a duty irrelevant. Thus, we will address that issue first.
 Does Pennsylvania Law Bar this Claim? {¶ 53} The Petersburg Defendants raise two questions when contending that the Caldwells' claims against them are barred by Pennsylvania law: 1) Does Pennsylvania law apply to these claims? and 2) If so, does that law bar the claims? The answer to the first question is moot since Pennsylvania law clearly does not bar the Caldwells' claims against the Petersburg Defendants.
 {¶ 54} In Pennsylvania, an employee's injuries are covered under the workers' compensation system while an independent contractor's are not. 77 P.S. 21; 77 P.S. 22, Universal Am-Can,Ltd. v. W.C.A.B. (Minteer) (2000), 563 Pa. 480, 485,762 A.2d 328, 330. However, Pennsylvania's statutes recognize an exception to this general rule, that of the "statutory employer." "`A statutory employer is a master who is not a contractual or common-law one, but is made one by Act.'" Peck v. DelawareCounty Bd. of Prison Inspectors (2002), 572 Pa. 249, 253,814 A.2d 185, 187-188, quoting McDonald v. Levinson Steel Co.
(1930), 302 Pa. 287, 292, 153 A. 424, 425. 77 P.S. 52 provides immunity from suit to a statutory employer.
 {¶ 55} "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe [sic] or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe [sic] or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe [sic]." Id.
 {¶ 56} The Pennsylvania Supreme Court requires that five specific elements must be met in order to prove that a master is a statutory employer: 1) the employer is under contract with an owner or is in the position of an owner; 2) the premises is occupied by or under the control of such employer; 3) the employer must make a subcontract; 4) part of the employer's regular business is entrusted to the subcontractor; and, 5) the person injured is an employee of that subcontractor performing the subcontracted work. McDonald, 302 Pa. at 294-295,153 A. at 426. "In determining whether a party is a statutory employer, courts should construe the elements of the McDonald test strictly and find statutory employer status only when the facts clearly warrant it." Peck, 572 Pa. at 255, 814 A.2d at 189. Thus, the Pennsylvania Supreme Court requires that courts be hesitant before affording people with the "shield" of statutory employer immunity. Id., 572 Pa. at 256, 814 A.2d at 189.
 {¶ 57} The Petersburg Defendants fit the first two factors since they owned and operated the quarry. The Petersburg Defendants then made a contract with Senex (the third factor) and Mr. Caldwell was a Senex employee (the fifth factor). Nevertheless, the Petersburg Defendants do not qualify as statutory employers in this case because they do not meet the fourth factor.
 {¶ 58} Pennsylvania courts have interpreted this fourth factor strictly. For instance, in McGrath v. Pennsylvania SugarCo. (1925), 282 Pa. 165, 127 A. 780, the defendant was engaged in the business of refining sugar for others. A pier was used in connection with the defendant's plant where the finished and unfinished material was handled under the general supervision of the defendant's employees. However, the defendant hired firms to obtain stevedores to actually move the material to and from the dock. One of these stevedores was injured while moving some of this material.
 {¶ 59} The Pennsylvania Supreme Court held that the stevedore was not injured while talking part in the defendant's regular business. It based this conclusion on the fact that the defendant refined sugar, "but had no part, at any time, in the actual handling of it on the pier, or loading and unloading in the river. This service was always performed by the employees of a stevedoring firm * * *. The facts disclosed would not justify a finding that the labor performed was within the line of the `regular business' of the defendant, and hence did not come within the sections of the act above referred to." Id.,282 Pa. 269, 127 A. at 781.
 {¶ 60} In this case, the Petersburg Defendant's regular business was crushing and preparing limestone. In order to obtain that limestone, the rock quarry had to be blasted with explosives, but the Petersburg Defendants never did any blasting on their own. Id. at 33. This is not materially different than the situation in McGrath. Thus, none of the Petersburg Defendants were Mr. Caldwells' statutory employer for the purposes of immunity from suit under Pennsylvania's workers' compensation statutes, so Pennsylvania law does not bar the Caldwells' claims against these defendants.
 Existence of a Duty {¶ 61} The Caldwells sought to recover against the Petersburg Defendants for negligence. In a negligence action, a plaintiff must prove all of the following: 1) that the defendant owed the plaintiff a duty of care; 2) that the defendant breached the duty of care; and, 3) that as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Menifee v.Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77.
 {¶ 62} In their motion for summary judgment, the Petersburg Defendants argued that they owed Mr. Caldwell no duty as a matter of law. Whether a defendant owed a plaintiff a duty "is fundamental to establishing actionable negligence." Jeffers v.Olexo (1989), 43 Ohio St.3d 140, 142. If there is no duty, then there is no legal liability. Id.
 {¶ 63} Whether a duty exists on the part of a particular defendant is a question of law for the court to decide. Wallacev. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 274,2002-Ohio-4210. Of course, the question of whether a duty exists depends upon the facts of the case, but "[s]imply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68.
 {¶ 64} R.C. 4101.11 and 4101.12 set forth the general rule regarding the duty that an employer of an independent contractor owes to the employees of an independent contractor. These statutes require employers to provide employees and frequenters with a safe place to work. R.C. 4101.11 provides:
 {¶ 65} "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."
 {¶ 66} R.C. 4101.12 provides:
 {¶ 67} "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."
 {¶ 68} The Ohio Supreme Court has explained that the duties imposed by these statues are "no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher v. U.S. Steel Corp. (1987),32 Ohio St.3d 248, 249. Thus, these statutes do not affect Ohio's long-recognized common law principle that a landowner who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of the contractor in connection with the execution of the work, if the employees proceed with the work knowing and appreciating that there is a condition of danger surrounding its performance. Wellman v. EastOhio Gas Co. (1953), 160 Ohio St. 103, paragraph two of the syllabus.
 {¶ 69} The Ohio Supreme Court has carved out an exception to the general rule stated in Wellman when the landowner "actively participates" in the work performed by the independent contractor's employees. Hirschbach v. Cincinnati Gas Elec.Co. (1983), 6 Ohio St.3d 206, syllabus. A landowner can actively participate in the work of an independent contractor's employees in one of two ways: 1) directing or exercising control over the independent contractor's employees' work activities, or 2) retaining or exercising control over a critical variable in the workplace. Sopkovich v. Ohio Edison Co., 81 Ohio St.3d 628,643, 1998-Ohio-0341. But Sopkovich does not limit a landowner's ability to actively participate in the work of an independent contractor's employees to just these two scenarios. If the landowner actively participates in work, then he "can be held responsible for the injury or death of an employee of the independent contractor." Hirschbach at syllabus.
 {¶ 70} In this case, there is no question that Mr. Caldwell, the employee of an independent contractor, was engaged in an inherently dangerous task and that he knew and appreciated that danger. Thus, the Caldwells claim that the Petersburg Defendants owed Mr. Caldwell a duty since they actively participated in the performance of his work.
 Direct Assistance in Work Activities {¶ 71} The Caldwells contend that the Petersburg Defendants actively participated in his work activities since one of their employees was directly assisting him in his work activities. They base their argument on Wiseman v. Gen. Motors Corp (1995),74 Ohio Misc.2d 111, a case out of the Lucas County Court of Common Pleas.
 {¶ 72} In Wiseman, the defendant manufactured automobiles. As part of the assembly process, cars were positioned on grates over a pit and painted. Excess paint would drip into the pit, so the pit would have to be occasionally cleaned. The defendant contracted with the plaintiff's employer to clean the sludge from that pit. While the plaintiff was cleaning the pit, the defendant's employees assisted him by pushing the sludge toward the hose used to clean the pit. The hose then clogged and jerked, causing the plaintiff to fall and injure himself. The Lucas County Court of Common Pleas concluded that these facts created a genuine issue as to whether the defendant actively participated in the plaintiff's work activities.
 {¶ 73} The decision in Wiseman does not support an argument that assistance is the equivalent of active participation. The court does not indicate the basis upon which it decided that there was a genuine issue of material fact, but it is very possible, given the facts, that the court questioned whether the defendant controlled a critical variable in the workplace. Furthermore, the decision is from a court of common pleas and has no binding effect on this court.
 {¶ 74} Furthermore, no other Ohio court has found active participation based solely on the assistance that the landowner provided the independent contractor's employee. Instead, courts have routinely concentrated on the amount of control that the landowner had over the independent contractor's employee when deciding whether the landowner actively participated in that employee's work. See e.g. Leiner v. Brewster Dairy, Inc., 5th Dist. No. 2003-CA-00259, 2004-Ohio-3260 (Even though defendant's employees would assist the employees of the independent contractor or do their work for them, the defendant did not actively participate in the work activities of the independent contractor's employees); Bell v. DPL, Inc. (Aug. 31, 1999), 4th Dist. No. 98CA663 (Plaintiff must show the defendant specifically directed the independent contractor's employee where and when to conduct their work activities).
 {¶ 75} Nevertheless, it is counterintuitive to conclude that the landowner owes no duty to an independent contractor's employee if the landowner assists that employee with his work. A landowner owes no duty to protect a third-party engaging in inherently dangerous work on his property because the third-party's work is inherently dangerous. However, if the landowner tries to assist the third-party and does so negligently, then the landowner's actions have made the situation more dangerous than it otherwise would have been. Furthermore, a landowner's direct assistance in the third-party's work is as active as participation in that work can get. Thus, even though Ohio courts have not stated that direct assistance is a form of active participation, we conclude that it maybe.
 {¶ 76} The Ohio Supreme Court's decision in Sopkovich
supports this conclusion insofar as it limits a landowner's liability to the scope of his active participation in the work.
 {¶ 77} "We emphasize, however, that any duty Ohio Edison may have owed to Lexie is not absolute. The reason, of course, is that Ohio Edison's participation in this case was clearly limited to the tasks of de-electrification of certain conductors in the work area and the dissemination of correct information concerning which conductors were energized and which had been de-activated. Therefore, as the court of appeals correctly recognized, Ohio Edison's liability (if any) may only be predicated on a breach of a specific duty that Ohio Edison undertook to perform, i.e., the tasks of de-electrification and communication. Accordingly, if Ohio Edison properly de-activated the conductors it had promised to de-activate, and accurately communicated with Morakis and the painters as to which conductors were activated and which were not, Ohio Edison would have discharged any duty of care owed to Lexie. Conversely, if Ohio Edison failed to de-activate the conductors it had promised to de-activate, or misinformed Morakis or Lexie as to which conductors were de-activated, liability could attach for Ohio Edison's failure to properly discharge a specific duty it had undertaken to perform, assuming that such failure was the proximate cause of Lexie's injuries." Sopkovich
at 643-644.
 {¶ 78} In this case, an employee of the Petersburg Defendants was directly assisting Mr. Caldwell in his work at the site. Therefore, the Petersburg Defendants owed Mr. Caldwell a duty to ensure that their employee was not negligent when providing Mr. Caldwell that assistance. Thus, the trial court erred when it concluded that the Petersburg Defendants did not owe Mr. Caldwell a duty.
 {¶ 79} We note that we find it highly unlikely, from the evidence currently in the record, that a fact-finder could conclude that the employee assisting Mr. Caldwell breached his duty of care or that his actions proximately caused Mr. Caldwell's injuries. For example, that employee was not in the area at the time that Mr. Caldwell was injured. Nevertheless, it would be improper for us to affirm the trial court on that basis at this time since the Petersburg Defendants did not move for summary judgment on that basis. As the Ohio Supreme Court said inSopkovich:
 {¶ 80} "We note, in passing, that the evidentiary materials strongly suggest that Ohio Edison did de-activate specific conductors in the work area and that it disseminated correct information to Morakis and to the painters concerning which conductors were energized and which had been de-activated. Further, the evidence strongly indicates that the cause of Lexie's injuries was that Lexie mistakenly entered into an area that was known to be an energized area. However, the sole issue in this appeal is whether the evidence was sufficient to survive summary judgment on the question of duty of care. The question whether Ohio Edison breached a duty of care, and the question whether such a breach (if any) was the proximate cause of Lexie's injuries, are matters to be resolved at trial or pursuant to a proper motion for summary judgment on the issue of breach of duty and/or proximate causation." Id. at 644, footnote 3.
 {¶ 81} Because the scope of the duty arising from the Petersburg Defendants' active participation in Mr. Caldwell's work is so limited, we will discuss the remaining ways in which the Caldwells contend that the Petersburg Defendants owed them a duty.
 Control of Critical Variable in the Workplace {¶ 82} The Caldwells contend that the Petersburg Defendants actively participated in Mr. Caldwell's work in a second way which created a different duty than the one already addressed. According to the Caldwells, the Petersburg Defendants had exclusive control over the high wall and muck pile and that these were critical variables in the workplace. Thus, the Caldwells believe that the Petersburg Defendants had the duty to ensure that the high wall and muck pile were safe.
 {¶ 83} In this case, there is no real dispute regarding whether the Petersburg Defendants had control over the high wall and muck pile. The dispute centers upon whether these were critical variables in the workplace.
 {¶ 84} According to Ohio Supreme Court precedent, a variable in the workplace is critical when the variable "dictat[es] the manner and mode" in which the independent contractor's employee does his work. Hirschbach at 208. For instance, in Hirschbach
the landowner would not let the contractor move a piece of equipment to a safer location, thereby refusing to eliminate the hazard which led to the employee's injury. Similarly, inSopkovich the defendant exerted exclusive control over the variable that made the work dangerous.
 {¶ 85} Appellate courts have generally found that variable in the workplace is critical in situations similar to those inHirschbach and Sopkovich. For instance, in Evans v. DaytonPower Light Co., 4th Dist. Co. 03CA763, 2004-Ohio-2183, the defendant controlled the supply of equipment which would have eliminated the danger. Likewise, in Wilson v. Brush Wellman,Inc., 103 Ohio St.3d 538, 2004-Ohio-5847, and Depugh v.Merillat Industries, Inc., 4th Dist. No. 00CA19, 2002-Ohio-1463, the defendants retained exclusive control over the variable that made the job dangerous.
 {¶ 86} The present case is not analogous to these situations. There is no evidence that the Petersburg Defendants' failure to trim the high wall and muck pile dictated the manner and mode of Mr. Caldwell's work in any way. Mr. Caldwell's job was to remove undetonated explosives from the muck pile, which was located near the high wall. The danger posed by the muck pile and the high wall were an integral part of his job. The Petersburg Defendants retained no control over how Mr. Caldwell chose to deal with this danger; they even had one of their employees assist Mr. Caldwell at Mr. Caldwell's direction in an effort to alleviate the danger.
 {¶ 87} The Petersburg Defendants did not actively participate in Mr. Caldwell's work despite his claim that they did not ensure that the high wall and muck pile were trimmed and safe. Accordingly, the Petersburg Defendants owed no duty of care to Mr. Caldwell to ensure that this aspect of his job was safe.
 Actual Knowledge of Dangerous Condition {¶ 88} The Caldwells rely on Nicholson v. Turner/Cargile
(1995), 107 Ohio App.3d 797, to argue that the Petersburg Defendants owed him a duty of care since they had actual knowledge of the danger posed by the high wall and muck pile. Neither that case nor any other caselaw supports this argument.
 {¶ 89} In Nicholson, the defendants were experts hired to provide architectural, engineering, construction management and administrative services for erection of a building. The plaintiff worked for a contractor who was participating in that building's construction. One of the defendants allegedly saw that the plaintiff was using an unsafe procedure during the construction, but did not tell the subcontractor about his concerns. A few days later, the plaintiff was killed while continuing to use the unsafe procedure.
 {¶ 90} The Tenth District analogized the situation to those discussed in Hirschbach and its progeny. The plaintiff tried arguing that the Hirschbach line of cases should not apply since the defendants were design professionals. They contended that design professionals have a duty to prevent or stop dangerous conditions or practices when they are actually aware of those hazards. The Tenth District refused to adopt the plaintiff's argument as law.
 {¶ 91} "Assuming the existence of such a theory which reconciles the cases plaintiffs and defendants rely on and thus creates a duty arising from design professionals' supervision, plaintiffs have not set forth sufficient evidence to establish that Madison and Korda/Nemeth actually breached such a duty. * * * As a result, even if we were to create a duty on the part of these design professionals, plaintiffs have not set forth essential facts giving rise to that duty." Id. at 807-808.
 {¶ 92} As can be seen, there are many reasons why Nicholson
does not create an exception to Hirschbach. First, the principle of law the plaintiffs argued would only apply to design professionals, while Hirschbach applies to all landowners and general contractors. Second, the Tenth District did not adopt the theory the plaintiffs advanced. Thus, it is not the law of the State of Ohio. Finally, if the rule the plaintiffs tried to argue in Nicholson were the law, then the Nicholson exception would swallow most of the Hirschbach rule. Hirschbach only applies in inherently dangerous situations. Thus, it would make little sense to say there is no duty in inherently dangerous situations, but there is a duty if the landowner knows of the dangerous condition.
 {¶ 93} A landowner does not owe a duty of care to an independent contractor's employee simply because the landowner knows of a dangerous condition if the employee's work is inherently dangerous.
 30 C.F.R. 56.9314 {¶ 94} 30 C.F.R. 56.9314 is an administrative regulation which provides: "Stockpile and muckpile faces shall be trimmed to prevent hazards to persons." The Caldwells argue that30 C.F.R. 56.9314 creates a duty of care and that this duty gives them a cause of action even though Ohio's common law does not recognize such a duty. In response, the Petersburg Defendants contend that this federal regulation does not preempt Ohio's common law since the federal Mining Safety and Health Act, which the regulation enforces, does not contain any preemptive language.
 {¶ 95} The question the Caldwells pose is whether an administrative regulation can create a duty of care where one would not otherwise exist. They contend that if a violation of an enactment is per se negligence, then the enactment can create a duty where one would not have otherwise existed. They further contend that a violation of 30 C.F.R. 56.9314 is negligence per se. Their argument is incorrect.
 {¶ 96} The Ohio Supreme Court has clearly held that a violation of an administrative regulation can never constitute negligence per se. In Chambers v. St. Mary's School,82 Ohio St.3d 563, 1998-Ohio-0184, the plaintiff tried arguing that the defendant was negligent per se because they did not comply with certain sections of Ohio's Basic Building Code. The Ohio Supreme Court disagreed. It contrasted administrative rule making with legislating and found the two were distinctly different. The court noted that lawmakers create public policy while rules and regulations only enforced the public policy enacted by the lawmakers. Given this difference, the court held that "[t]he violation of an administrative rule does not constitute negligence per se." Id. at syllabus. Instead, the court said that "a violation [of a regulation] may be admissible as evidence of negligence." Id.
 {¶ 97} Since 30 C.F.R. 56.9314 is an administrative regulation, a violation of that regulation cannot constitute negligence per se and can only be used as evidence of negligence. However, using that regulation as evidence of a duty in this case flies in the face of established Ohio law, which states that a landowner who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of the contractor in connection with the execution of the work if the employees proceed with the work knowing and appreciating that there is a condition of danger surrounding its performance. SeeWellman at paragraph two of the syllabus. Essentially, the Caldwells are asking us to ignore the Ohio Supreme Court's syllabus law, which states that a landowner has no duty in these circumstances, when an administrative regulation states that the landowner should take certain precautions, even though a violation of an administrative regulation is not negligence per se. We simply cannot do this.
 {¶ 98} As the Ohio Supreme Court stated in Chambers,
legislation, not regulation, sets policy. In the absence of legislation to the contrary, we must follow the law set forth by the Ohio Supreme Court before we can follow the guidelines set forth in administrative regulations. In this case,30 C.F.R. 56.9314 cannot create a common law duty of care since Ohio law specifically precludes the duty that regulation purports to create. The Caldwells' arguments to the contrary are meritless.
 Landowner's Recklessness {¶ 99} In their final argument, the Caldwells claim that they should be able to recover against the Petersburg Defendants despite the fact that the Petersburg Defendants owed them no duty since the Petersburg Defendant's reckless actions, rather than the danger inherent in his work, caused his injuries.
 {¶ 100} The Caldwells cite no authority in support of this proposition and the arguments they present are simply restatements of the arguments they have already presented. Because the Caldwells have not presented any additional support, this final argument is meritless for the same reasons most of their previous arguments were meritless.
 Conclusion {¶ 101} The Caldwells contend that the trial court erred when it granted summary judgment to Senex, but this is incorrect. Pennsylvania law prevents employer intentional suits and that Pennsylvania law applies to the Caldwells' substantive claims against Senex since R.C. 4123.54(G) states that the law of the state where the employee is receiving workers' compensation benefits provides the exclusive remedy against the employer for the injury. Thus, the trial court's decision to grant summary judgment to Senex is affirmed.
 {¶ 102} The Caldwells also argue the trial court abused its discretion when it refused to allow them to amend their complaint to state an additional basis for their negligence claim against the Petersburg Defendants. However, the amendment the Caldwells tried to make merely pled the matters already before the court with more particularity. Thus, the amendment was unnecessary and the trial court did not abuse its discretion by denying the motion to amend.
 {¶ 103} Finally, the Caldwells contend that the trial court improperly concluded that the Petersburg Defendants owed Mr. Caldwell no duty. They are correct since an employee of the Petersburg Defendants directly assisted Mr. Cadlwell's work activities. However, the duty of care the Petersburg Defendants owed to Mr. Caldwell only extends to the amount of their active participation.
 {¶ 104} Thus, the judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded for further proceedings.
Donofrio, P.J., concurs.
Waite, J., concurs.